[No. 39201.    En Banc.    November 9, 1967.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR
RAYMOND HAYE, *Appellant.*\*

*Reported in 433 P.2d 884.

*Philip R. McIntosh* and *James R. Young,* for appellant.

*Charles O. Carroll, Neal J. Shulman,* and *Gary A. Cunningham,* for respondent.

DONWORTH, J.—Appellant, Arthur Raymond Haye, was charged by justice court complaint on March 11, 1966, as follows:

> Arthur Raymond Haye did commit the crime of negligent homicide as follows:
>
> He, the said Arthur Raymond Haye, in the County of King, State of Washington, on or about the 5th day of February, 1966, then and there operating a motor vehicle, to-wit: a 1960 Hillman, in a southerly direction upon Roosevelt Way N. E. in the area of N. E. 42nd, a public highway, in said county and state, and being in the discharge of his duties as such driver and operator, then and there did operate said motor vehicle in a reckless manner, or with a disregard for the safety of others, or while under the influence of or affected by the use of intoxicating liquor, and as a direct result of the aforesaid acts, the said Arthur Raymond Haye, did drive said motor vehicle into and against one Nicholas A. Apostle, a human being and pedestrian, crossing Roosevelt Way N. E. in the area of N. E. 42nd, and as a direct result of said collision, the said Arthur Raymond Haye did mortally injure the said Nicholas A. Apostle, from which injuries the said Nicholas A. Apostle died a few hours later;
>
> Contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington.

## Count II

And I, Charles O. Carroll, Prosecuting Attorney aforesaid, further do accuse Arthur Raymond Haye of the crime Failure to Stop and Render Aid at Scene of an Accident Resulting in Injury or Death to a Person, committed as follows:

He, the said Arthur Raymond Haye, at the time and place referred to in Count I, and connected therewith, in the County of King, State of Washington, on or about the 5th day of February, 1966, being then and there engaged in driving and operating a motor vehicle, to-wit: a 1960 Hillman, upon a public highway in said county and state, then and there knowing did collide and come in contact with a human being, thereby causing fatal injuries to said human being, and he, the said Arthur Raymond Haye, willfully and unlawfully did neglect, fail and refuse to stop and render such aid and assistance as was required of the said Arthur Raymond Haye and contrary to the provisions of RCW 46.52.020; contrary to the statute in such case made and provided, and against the peace and dignity of the State of Washington.

Appellant was arrested pursuant to warrant issued on March 11, 1966, and on March 16, 1966, he appeared with his attorneys in justice court and entered pleas of not guilty to both counts. Witnesses for the state were sworn and testified, and exhibits for the state were introduced and admitted. One witness was sworn and testified for the defense. The record before this court does not reflect the substance of the testimony before the justice court, but appellant's sole defense at the subsequent trial in superior court consisted of his contention that he was not the driver of the automobile at the time of the accident, but rather that the driver of the car was a companion, one McGuinness.

At the conclusion of the hearing in justice court, appellant was found guilty of count 2 as charged in the complaint, and the court further found that there was sufficient evidence presented to bind appellant over for trial in superior court on the charge in count 1 (negligent homicide). Appellant was sentenced on count 2 to one year imprison-

ment in the King County jail, and fined $500. Appellant filed a written notice of appeal.

In superior court, appellant urged that the proceedings in justice court were in the nature of an actual trial on the charge of negligent homicide, that the justice court had the power to impose sentence therefor, and that a trial in superior court thereafter for the same offense would constitute double jeopardy, in violation of Const. art. 1, § 9, and of the fifth and fourteenth amendments to the United States Constitution. Appellant's motion was denied, however, and the two causes (the superior court charge of negligent homicide and the appeal from the justice court conviction on count 2) were joined for trial. After a trial before a jury in the superior court resulted in a verdict of guilty on both counts, appellant was sentenced to 20 years' imprisonment on the negligent-homicide charge, and to a term of 1 year in King County jail on count 2, the jail term to be suspended. He has appealed to this court from this judgment and sentence.

Appellant contends in this court, as he did before the superior court, that the trial in superior court on the negligent-homicide charge violated appellant's rights under the state and federal constitutions to not be placed twice in jeopardy for the same offense.

■ One who asserts the bar of double jeopardy under the constitution must affirmatively establish:

(1) that he has previously been placed on trial for the same offense and (2) *that the court of the former trial was one of competent jurisdiction to hear and determine the merits of the cause. State v. Ridgley,* 70 Wn.2d 555, 557, 424 P.2d 632 (1967). (Italics ours.)

It is further settled that the crime of negligent homicide, under RCW 46.56.040 (now codified as RCW 46.61.520), constitutes a felony. *State v. Harvey,* 57 Wn.2d 295, 356 P.2d 726 (1960); *State v. Sayward,* 66 Wn.2d 698, 404 P.2d 783 (1965).

The issue presented, therefore, is whether the justice court is a court "of competent jurisdiction" to hear and

determine the merits in a case involving the charge of negligent homicide with a motor vehicle, a felony.

The crux of appellant's argument that such jurisdiction is vested in the justice court is based on the enactment of Laws of 1955, ch. 393, § 4 (codified as RCW 46.08.190) which provides that:

> Every justice of the peace and police court judge shall have concurrent jurisdiction with superior court judges of the state for all violations of the provisions of this title and may impose any punishment provided therefor.

The title Motor Vehicles, RCW 46, includes several felonies among which is the crime of negligent homicide.

While this court has recognized that the apparent intent of the legislature in enacting the above-quoted provision was to vest in justice courts jurisdiction to try and to punish certain types of felonies (*State v. Wright*, 51 Wn.2d 606, 320 P.2d 646 (1958)), the specific question of whether the legislature has the power to accomplish this intention has never been considered by this court. The decision of this important constitutional question is imperative in the present case.

Constitution, art. 4, § 10 (amendment 28) provides that:

> *The legislature* shall determine the number of justices of the peace to be elected and *shall prescribe by law the* powers, duties and *jurisdiction of justices of the peace: Provided, That such jurisdiction granted by the legislature shall not trench upon the jurisdiction of superior or other courts* of *record,* except that justices of the peace may be made police justices of incorporated cities and towns. Justices of the peace shall have original jurisdiction in cases where the demand or value of the property in controversy is less than three hundred dollars or such greater sum, not to exceed one thousand dollars, as shall be prescribed by the legislature. In incorporated cities or towns having more than five thousand inhabitants, the justices of the peace shall receive such salary as may be provided by law, and shall receive no fees for their own use. (Italics ours.)

The proviso above quoted places a clear limitation upon the power of the legislature to grant jurisdiction to justice

courts. The next question is: What is the jurisdiction of the superior and other courts of record upon which the jurisdiction granted justices of the peace must not trench?

Constitution, art. 4, § 6 (amendment 28) sets forth the jurisdiction of superior courts as follows:

> The superior court shall have *original jurisdiction* in all cases in equity and in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to one thousand dollars, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and *in all criminal cases amounting to felony,* and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor. They shall have such appellate jurisdiction in cases arising in justices' and other inferior courts in their respective counties as may be prescribed by law. They shall always be open, except on nonjudicial days, and their process shall extend to all parts of the state. Said courts and their judges shall have power to issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus, on petition by or on behalf of any person in actual custody in their respective counties. Injunctions and writs of prohibition and of habeas corpus may be issued and served on legal holidays and nonjudicial days. (Italics ours.)

May the legislature then vest jurisdiction over a criminal case amounting to a felony in the justice court, notwithstanding the constitutional grant of "original jurisdiction" in such cases to the superior courts, or would such a legislative grant "trench" upon the jurisdiction of the superior courts?

In *Moore v. Perrott,* 2 Wash. 1, 4, 25 Pac. 906 (1891), this court said that:

The language of the constitution is not that the superior courts shall have exclusive jurisdiction, but it gives to the superior courts universal original jurisdiction, leaving the legislature to carve out from that jurisdiction the jurisdiction of the justices of the peace, and any other inferior courts that may be created. Thus, justices of the peace may be given exclusive original jurisdiction in cases where the demand or value of property in controversy is not $100, in cases of misdemeanor, and of other special cases and proceedings not otherwise provided for or specially enumerated as within the jurisdiction of the superior courts. It is the enumeration of the particular matters which are within the original jurisdiction of the superior courts, which we interpret to mean that those matters pertain to them exclusively. The language is not the clearest that could have been used; but, unless it is so interpreted, there can be no possible force in the restriction placed upon the legislature in its power to confer jurisdiction upon justices of the peace; . . . . (Italics ours.)

We have consistently adhered to this interpretation (see *State v. Schaffer,* 31 Wash. 305, 71 Pac. 1088 (1903); *State ex rel. Keasal v. Superior Court,* 76 Wash. 291, 136 Pac. 147 (1913)), and deem it controlling in the present case.

Appellant argues in his reply brief, however (correctly noting that none of the cited cases deals specifically with any attempted grant of criminal felony jurisdiction to the justice courts), notwithstanding such interpretation, that:

In carefully reading the provisions of Article IV, Section 6, we might note that equity cases, criminal cases amounting to felony, and misdemeanor cases are all joined together by commas. The specially enumerated items are separated by semi-colons rather than by commas. This would indicate that the wording "not otherwise provided for by law" attached after the reference to misdemeanors also refers to felonies and civil jurisdiction as well as misdemeanors. This would lead one to believe that the first several phrases which were joined by commas are all one statement by the framers of the Constitution, and that the framers of the Constitution intended to

specifically enumerate other items and separate them by semicolons. Thus the items which are separated by commas are not the causes which are specifically enumerated, and therefore the case of *State v. Schaffer,* and *Moore v. Perrott* are not controlling in cases of felony and misdemeanor.

██ We are not convinced that appellant's argument states sufficient reason to depart from the clear meaning of the constitutional provision. We hold that the qualifying phrase "not otherwise provided for by law" refers solely to misdemeanors.[1] This interpretation is in accord with the well-settled rule of construction that, where no contrary intention appears, relative and qualifying words and phrases refer, both grammatically and legally, to the last antecedent. See *Schneider v. Forcier,* 67 Wn.2d 161, 406 P.2d 935 (1965).

Appellant next contends that the constitution, in article 4, section 12, provides for the establishment of inferior courts other than justice of the peace courts; that such courts are not subject to the constitutional limitation that the jurisdiction granted shall not trench upon the jurisdiction of the superior and other courts of record (and hence the legislature could vest felony criminal jurisdiction in such courts); and that the original proceeding against appellant in this case was in such an inferior court, *i.e.* district justice court, established pursuant to Laws of 1961, ch. 299.

We need not decide, however, whether appellant is correct in this contention, for if appellant is correct, and such court is not a justice of the peace court (and it certainly is not a "police court"), then the legislature has not attempted to vest jurisdiction over the felony of negligent homicide in such a court. See Laws of 1955, ch. 393, § 4. If such court is a justice of the peace court (and appellant's contention is incorrect), then what we have already said is applicable,

---

[1] The differing treatment accorded the matters in Const. art. 4, § 6, may have been due to the differing nature of these matters, *i.e.* those dealt with in the first portion (separated by commas) are broad areas of law cognizable at common law, while the latter matters (separated by semicolons) are of a special statutory nature.

and the legislature *could not* vest jurisdiction over the crime of negligent homicide in such court.

■ We conclude that the district justice court, in which appellant first appeared on the charge of negligent homicide, was without jurisdiction to hear and determine the charge on its merits. It was not a court of "competent jurisdiction." The legislature was without power to confer jurisdiction over the crime, a felony, in a justice of the peace court under our state constitution, article 4, section 10 (amendment 28). Therefore, in so far as it was attempted, by Laws of 1955, ch. 393, § 4, to vest such jurisdiction in justice courts and police courts, such attempt must be deemed ineffective and void.[2]

Appellant, not having been once in jeopardy "before a court of competent jurisdiction" was not unconstitutionally placed in jeopardy by his trial on the charge of negligent homicide in superior court.[3]

Appellant further assigns error to the court's refusal to grant a mistrial based on the prosecution's demand, made in the presence of the jury, for the production of a written statement by the state's principal witness, McGuinness, which appellant's counsel had in their possession.

As was pointed out earlier in this opinion, appellant's main defense was that his companion, McGuinness, and not

---

[2]It is not intended, by this opinion, to nullify the statutory provision in its entirety. It is repugnant to the constitution only in so far as it purports to vest felony jurisdiction in the justice of the peace and police courts.

The enactment has the further effect of giving police courts the jurisdiction to hear and determine criminal actions for violations of the state motor vehicle code. This power did not exist prior to the 1955 enactment, and this grant of jurisdiction is not affected by this opinion. See AGO 61-62 No. 116.

[3]We should hasten to point out that the procedure followed in this case, *i.e.* the filing of a complaint containing two counts, ostensibly for the purpose of a preliminary hearing only on the first count, but a full trial on the merits as to the second count is wholly undesirable, and is not to be deemed to have received sanction by this opinion. While we perceive no harm under all the circumstances of this case, it should be realized that the procedure is fraught with dangers, and prejudice may readily be found to exist under slightly different circumstances.

he, drove the car on the evening and at the time of the accident which resulted in the death of Mr. Apostle. On cross-examination by appellant's counsel, it developed that McGuinness had given to appellant's attorneys a written statement relating to the accident the day following the accident.

The first reference to this statement was made by the witness himself, in an unresponsive answer to a question on cross-examination, as follows:

The Witness: Your Honor, I would like to object on my own behalf to the testimony at that time. I wrote Mr. Young [appellant's attorney] a statement the day after the accident, in his office. I don't feel it should be used either against me because I was under the impression he was acting in the capacity of attorney. The Court: All right. Mr. Young: I didn't hear that discussion. The Witness: I asked the Judge—I believe you have in my own handwriting a statement that I wrote in your office under the impression that you were acting in my behalf, and I do not feel you ought to use this in this court. Mr. Young: I would move the jury be instructed to disregard this particular testimony or statement and comments. The Court: Well, you asked him what he talked to me about, and he told you. You may disregard it. It has nothing to do with it. If the issue arises, we'll take care of it at that time.

The next reference, and the one particularly objected to by appellant, occurred on the redirect examination of the witness, McGuinness, as follows:

Q. Mr. McGuinness, when was it that you first came forward with the information you had regarding this fatality? A. About five weeks after the event occurred. Q. Why was it that you did not come forward prior to this time? Mr. Young: I object to this. A. Because Mr. Young told me not to. The Court: Just a minute. That answer is stricken, ladies and gentlemen. An objection has been interposed, and I have to rule on that first. You object? Mr. Young: I object. The Court: What are your grounds? Mr. Young: First, it is irrelevant, immaterial, incompetent. It has no basis concerning his evidence. The fact is that he did wait five weeks. Why he waited is not pertinent to this particular action. The Court: Objection

overruled. You opened this issue up, Mr. Young, in your cross-examination. Q. (By Mr. Shulman) Why did you not come forward earlier? A. Because I was encouraged by Mr. Young not to come forward, and secondly, because of my relationship with the defendant. Q. Had you given a statement to Mr. Young following this fatality? A. The day after the event occurred. Q. Was that statement, or is that statement consistent with your testimony on the stand today? A. Yes, I believe it is. Mr. Shulman: Your Honor, I would ask the Court to direct that that statement be made available at this time. The Court: Motion denied.

Thereafter, in the absence of the jury, appellant moved the court to declare a mistrial contending that the demand, in the presence of the jury, unfairly and unconstitutionally prejudiced appellant. The motion was denied, and appellant thereupon moved that the court instruct the jury to disregard the comments of the prosecutor concerning the production of the statement.

Regarding this assignment of error, appellant relies chiefly on *State v. Jackson,* 83 Wash. 514, 516, 145 Pac. 470 (1915), wherein it was held to be reversible error for the prosecutor, in the presence of the court and jury and over the objections of counsel, to demand the production of documents (a statement in writing of a witness) by the accused. The reasoning sustaining the principle was stated to be:

That the state is not put to the necessity, neither will it be permitted to put an inference of guilt which necessarily flows from an imputation that the accused person has suppressed or is withholding evidence, when the constitution provides that no person shall be compelled to give evidence against himself. Not being bound to produce evidence against himself, the demand is futile and can serve no purpose, except to put defendant in a false light before the jury and compel him to defend himself against the inferences arising from a collateral circumstance and to the stress of extricating himself from a position in which the constitution says he shall not be placed.

However, respondent points out that, in the subsequent case of *State v. Lindberg,* 125 Wash. 51, 215 Pac. 41 (1923), it was held, at 66, that:

While a casual reading of the opinion [*State v. Jackson, supra*] might indicate that it was held reversible error for a prosecuting officer to make a demand upon a defendant in the presence of the jury for the production of a paper or document containing incriminating evidence against him without more, a more careful examination of the opinion will show that this was not its purpose nor intent. There, the demand was not only made, but it received the sanction of the trial court. The defendant was put to the hazard of either producing the incriminating evidence or submitting to the inference of guilt arising from his refusal to produce it. Such, also, is the purport of the cases cited by the court as sustaining the principle announced. Here, the facts are different. The demand made did not receive the sanction of the court. On the contrary, *the demand was withdrawn when the objection was made, and the court not only permitted its withdrawal, but expressly instructed the jury to disregard it.* To reverse the judgment for the reason assigned, we must go much farther than the cited case goes; we must hold that a mere demand upon the defendant to produce an incriminating document, withdrawn upon objection and repudiated by the court, is so far reversible error as to be incurable other than by a cessation of trial and the beginning over again before another jury. It must be an extreme instance where this is required, and we are not persuaded that this is one. (Italics ours.)

■ The true principle to be gleaned from these decisions, together with others involving the issue presented (*e.g. State v. Beck,* 56 Wn.2d 474, 349 P.2d 387 (1960); *State v. Tanner,* 54 Wn.2d 535, 341 P.2d 869 (1959); *State v. Morden,* 87 Wash. 465, 151 Pac. 832 (1915)) is this: It is improper for the prosecutor, in the presence of the jury, to call upon the defendant or his counsel to produce a document as being in his possession. Such error, however, may be generally cured by proper admonishment or instruction from the court to the jury.

It would also seem clear that an accused may waive his objection to such error. See annotation, 110 A.L.R. 101, 106, wherein it is said that:

[W]here a defendant, after the making of the objectionable demand, offers the document demanded in evidence, under circumstances leaving no substantial doubt that he would have produced and offered it in evidence even if the demand had not been made, the hypothesis that prejudice resulted from the demand is negatived, especially where it cannot be said that the document is "highly incriminatory." Bain v. United States (1920; C.C.A. 6th) 262 F. 664, 45 Am. Bankr. Rep. 79 (writ of certiorari denied in (1920) 252 U.S. 586, 64 L. ed. 729, 40 S. Ct. 396).

And see People v. Reid (1925) 72 Cal. App. 611, 237 P. 824, II. infra, and Thomas v. State (1926) 34 Okla. Crim. Rep. 63, 244 P. 1116, II. infra.

In the present case, although the prosecutor's motion for production was denied by the court, no admonishment was given by the court to the jury, and, although a curative instruction was requested by appellant shortly after the demand was made, none was given by the court. However, appellant's request for an instruction was not later renewed; nor was any exception taken to the court's failure to give such an instruction.

Further, near the conclusion of the rebuttal presented by the prosecution, the statement in question was produced by appellant, and McGuinness, who was then on the witness stand, was instructed by defense counsel to read the statement to the jury. After he had done so, he was asked by defense counsel if he wished to revise his testimony on a certain point on which there was a seeming inconsistency between the earlier written statement and his testimony at the trial. In short, appellant sought to impeach the witness, McGuinness, by the use of McGuinness' prior "inconsistent" statement. We cannot but conclude that such an attempt would have been made whether or not the prosecutor had earlier demanded production of the document. Appellant made use of the statement for his own purposes,

and not to offset any purported prejudice that might have resulted from the prosecutor's demand. Under the rule quoted above, we hold that appellant waived his right to assign error based on the prosecutor's original demand for the production of the document. This assignment of error, therefore, has been waived by appellant.

■ Appellant next assigns as error the court's permitting the prosecution witness, McGuinness, to testify to the contents of the statement referred to above. The challenged testimony was elicited after the witness, McGuinness, was *recalled* for additional direct examination after his previous testimony had been attacked on cross-examination by appellant as a recent fabrication. In *State v. Pitts*, 62 Wn.2d 294, 296, 382 P.2d 508 (1963), we said:

> ". . . A witness' prior out-of-court statements consistent with his in-court testimony are admissible for the sole purpose of re-establishing the witness' credibility when: (1) his testimony has been assailed (2) under circumstances inferring recent fabrication of his testimony (3) when the prior out-of-court statements were made under circumstances minimizing the risk that the witness foresaw the legal consequences of his statements. . . ."

The rule is applicable in the present case, and the admission of testimony regarding the witness' prior statement was proper. This assignment of error is likewise without merit.

Appellant's next assignment of error relates to a remark by the trial court during cross-examination of McGuinness which appellant contends constituted a comment on the evidence which disparaged appellant's cross-examination of the prosecution's witness in the presence of the jury.

The context in which the remark was made was as follows:

> The Witness [McGuinness]: Your Honor, I would like to object on my own behalf to the testimony at that time. I wrote Mr. Young a statement the day after the accident, in his office. I don't feel it should be used either against me because I was under the impression he was acting in the capacity of attorney. The Court: All right. Mr.

Young: I didn't hear that discussion. The Witness: I asked the Judge—I believe you have in my own handwriting a statement that I wrote in your office under the impression that you were acting in my behalf, and I do not feel you ought to use this in this court. Mr. Young: I would move the jury be instructed to disregard this particular testimony or statement and comments. The Court: Well, you asked him what he talked to me about, and he told you. You may disregard it. It has nothing to do with it. If the issue arises, we'll take care of it at that time. Mr. Young: I would also ask that the witness be warned against any further comments that are not responsive to questions. Mr. Shulman: If the witness wants to invoke his privilege, it's certainly his right to do so. The Court: That's right. He has the privilege coming and he can invoke it. Mr. Young: I'm not sure I know what privilege at this point. The Court: If you want to ask me, I'll tell you before the jury. But if you don't, just keep quiet. *This is all trivia anyway.* Let's get another question. Mr. Young: If the Court please, I would like to move for a mistrial at this time. The Court: Denied. (Italics ours.)

Article 4, section 16 of the state constitution provides that:

Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law.

■ In *Blackburn v. Groce,* 46 Wn.2d 529, 536, 283 P.2d 115 (1955), we noted that it was stated relative to article 4, section 16:

All comment is prohibited, but it does not follow that every comment constitutes grounds for a mistrial or that a new trial will be granted in consequence thereof. The test is, Was the party complaining of the comment prejudiced thereby? *Heitfeld v. B.P.O.K.* (1950), 36 Wn. (2d) 685, 220 P. (2d) 655, 18 A.L.R. (2d) 983; *State v. Herwitz* (1919), 109 Wash. 153, 186 Pac. 290.

In the present case the comment fails the test. The court's comment unmistakably refers to the colloquy between the court and counsel on a collateral matter, and did not relate in any way to what appellant terms the "evasions and inconsistencies" of the witness McGuinness. We

cannot but conclude that appellant was not prejudiced by the court's remark, and the assignment of error is without merit. See *Blackburn v. Groce, supra.*

In his next two assignments of error, appellant complains of remarks made by the prosecutor in his closing argument and contends that the court should have instructed the jury to disregard the comment or should have granted a mistrial based upon the prosecutor's misconduct.

The statement referred to was as follows:

> Probably one of the most amazing facets of the testimony that you have heard over the last few days was the attempt by Mr. Haye to weave his story in around and through the statement of Mr. McGuinness, the statement that was given by Mr. McGuinness to the defense the day following this fatality, the same statement that Mr. McGuinness was advised not to repeat to anyone.
>
> Preying on this statement, the weaknesses that they knew existed in this statement, the defense has built and attempted to weave a fabrication around this very statement that they had in their possession.
>
> Mr. McIntosh: Your Honor, I object to the argument of counsel accusing the defense of weaving a fabrication, and ask that the jury be instructed to disregard counsel's comment.
>
> The Court: Ladies and gentlemen, you are to determine whether or not fabrications are made or not made, and it is your prerogative and duty to make those determinations, not to accept statements of counsel as being true. Statements of counsel are merely argument. The facts as you see them are the determining facets.

We do not agree with appellant that the statement constitutes a clear expression of personal opinion on the part of the prosecutor. We further conclude that the court's admonition was sufficient to cure any prejudice which could conceivably have resulted from the remarks. The assignment is without merit.

The final assignments of error made by appellant relate to appellant's request for and the trial court's refusal to give an instruction bearing on the weight to be given the

testimony of an accomplice, it being appellant's contention that the witness, McGuinness, was at least an accomplice.

Appellant's requested instruction, which was refused by the court, stated that:

The witness, Harold E. McGuinness, who has testified in this case, is by his own admission and by his own testimony an accomplice if not a principal. An accomplice is one who is associated with others in the commission of crime, all being principals. McGuinness has testified that he was associated with the defendant in committing the crime of negligent homicide and failure to stop at the scene of an accident in that he participated with the defendant as a passenger in the defendant's automobile. That in law would make him an accomplice. The court instructs you that the testimony of an accomplice comes from a polluted source, and that, while the rule of law is that a defendant may be convicted on the uncorroborated testimony of an accomplice, where the honest judgment is satisfied beyond a reasonable doubt, still a jury should act upon such testimony with great care and caution and subject it to a careful examination in the light of other evidence in the case, and the jury should not convict upon such testimony alone, unless, after a careful examination of it, they are satisfied beyond all reasonable doubt of its truth.

In many, if not most cases, the evidence of an accomplice, uncorroborated in material matters will not satisfy the honest judgment beyond a reasonable doubt, and it is clearly insufficient to authorize a verdict of guilty.

The corroboration that the law requires for the testimony of an accomplice ought to be sufficient to satisfy the jury of the truth of the accomplice's testimony, and the corroboration must be as to some fact connecting the defendant with the commission of the offense, and it is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

The proposed instruction was admittedly based on that proposed by appellant in *State v. Pearson,* 37 Wash. 405, 415, 79 Pac. 985 (1905), cited by appellant here, wherein this court said:

While we do not now announce the doctrine that a conviction should be permitted in no case on the uncorrobo-

rated testimony of an accomplice, nevertheless we do hold that the trial court should carefully caution the jury in such cases in the matter of weighing such testimony, and should warn it against a conviction on such uncorroborated testimony. We think the refusal of the trial court to give the fifth instruction above set forth, which was requested by appellant, was reversible error.

In *State v. Emmanuel*, 42 Wn.2d 799, 821, 259 P.2d 845 (1953), we held that:

> The test in this state as to whether a witness is an accomplice or not is whether he could be indicted for the same crime for which the defendant is being tried.

The instruction proposed by appellant erroneously states that McGuinness' "participation" with appellant "as a passenger in the defendant's automobile" renders him, in law, an accomplice. The instruction could not properly have been given.

McGuinness testified that, immediately after the accident, he urged appellant to stop or to go back, but appellant would not do so. McGuinness' actions thereafter render him, at most, an accessory under RCW 9.01.040. Certainly he is not an accomplice who participated in the commission of the crime. He could not have been indicted for the same crime for which appellant was being tried.

We further find that there is corroboration of the witness' testimony through the testimony of Debra Duren, a witness to the accident, who testified that *the passenger* in the Hillman car wore glasses. (Appellant does not wear glasses. The witness, McGuinness, does.)

We hold that the court did not err either in refusing to give appellant's requested instruction, or in failing to give an instruction as to the consideration to be given an accomplice's testimony.

Having carefully considered all appellant's assignments of error and finding them to be without merit, we conclude

that appellant's conviction, and the judgment and sentence imposed thereon must be, and hereby are, affirmed.[4]

All Concur.

January 10, 1968. Petition for rehearing denied.

*Reported in 434 P.2d 5.

---

[4]We have given consideration to respondent's motion for an order striking appellant's reply brief. The motion is denied.