[No. 61-40621-3.    Division Three.    February 24, 1970.]

A. LOWDEN JOHNSON, *Respondent*, v. E. B. MILLER *et al.*, *Appellants*.

*Leavy, Taber & Schultz* and *James Leavy*, for appellants.

*Minnick, Hahner & Hubbard* and *W. L. Minnick*, for respondent.

MUNSON, J.—Plaintiff-landlord Johnson brought this action to compel the return of 530 bee boards filled with the larvae of leaf-cutter bees and to recover unpaid rent. The trial court ordered the return of the boards and, after offsetting amounts owing each party, entered judgment against defendants Miller for $160.56. Defendants appeal from the order requiring the return of the boards.

In March 1963, Johnson leased the Millers his farm in the Walla Walla Valley. Under the lease ending December 31, 1967, defendants were to grow alfalfa hay and alfalfa seed.

Both parties were interested in increasing production of the latter because of its higher commercial value. Essential for the success of a seed crop is effective pollinization. After experimenting with different types of pollinators, it was found that the leaf-cutter bee, native to the area, was an excellent pollinator. At the time defendants took possession of the premises, plaintiff had between 15 and 20 commercial bee boards (containing 2,000 holes each) and a few home-made boards, filled with larvae.[1] However, no mention of leaf-cutter bees is made in the lease.

In late 1964, defendants began to catch and breed leaf-cutter bees in order to increase the production of alfalfa seed. Defendants placed approximately 11 boards off plaintiff's property for the purpose of capturing bees and then brought these boards to the farm to pollinate and breed. At the conclusion of the lease there were 584 filled bee boards of which defendants took 530. The remainder were left to compensate plaintiff for the empty boards he had supplied during the lease period.

The record shows that in 1965, because of bee board thefts in the area, plaintiff placed his name on all of the boards on the farm. This action resulted in a confrontation between plaintiff and defendants concerning ownership of the bee boards. At that time, plaintiff told defendants he would not allow them to remove the boards from his premises but would reimburse them for any costs connected with the boards. Although denied by defendants, plaintiff

---

[1]The adult female leaf-cutter bee lines a hole in a wooden board with alfalfa leaves making a nest consisting of balls of alfalfa pollen and nectar. In gathering nectar and pollen for her nest, the female bee "trips" the alfalfa blooms. In each hole the female bee lays her eggs. The entire life cycle of these bees is spent in close proximity to these boards as the bees venture only so far as necessary to obtain pollen and nectar for food and home building. Each hole will normally house several larvae which winter within the hole. The boards are stored in a cool place over the winter and set out into the alfalfa field the following spring. After hatching, with the advent of warmer temperature, each young female will find herself a new nest, *i.e.*, a new hole in a board. Therefore, by placing new blank boards next to the old boards with hatching larvae, one can cause an appreciable increase in their bee population.

testified Mr. Miller told him he had no intention of removing the boards from the farm.

■ Defendants' assignments of error raise one question—the ownership of the bee boards. The trial court entered the following finding upon this issue:

### X.

In 1965, Johnson put his name on most of the bee boards in his fields. That he also informed Miller he would pay Miller the cost of boards purchased by Miller but that the bee boards were to be left on the farm at the expiration of the lease. That defendant Miller, according to the testimony of Lowden Johnson and Erma Johnson, told Mr. Johnson that he would leave the bee boards on the Johnson farm at the expiration of the lease. Defendant Miller at trial denied making this statement. *That the Court finds this testimony of Mr. and Mrs. Johnson to be entirely credible and consistent with the proved facts and circumstances of the case.*

(Italics ours.) There is substantial evidence to support this finding of agreement between plaintiff and defendants as to what disposition should be made of the bee boards at the expiration of the lease. *Security State Bank v. Klasey,* 67 Wn.2d 430, 433, 407 P.2d 983 (1965).

Defendants seek to determine ownership of the leaf-cutter bees on the basis that they are ferae naturae. *Graves v. Dunlap,* 87 Wash. 648, 152 P. 532 (1915); *Ferguson v. Miller,* 1 Cow. 243, 13 Am. Dec. 519, 39 A.L.R. 353 (N. Y. 1823). We do not reach that issue. The parties are entitled, as between themselves, to agree to ownership. The effect of the trial court's finding is to lodge ownership in plaintiff and custodial care in defendants. Defendants gain a benefit through their obtaining increased production of alfalfa seed. The trial court awarded to them their costs for purchases of new boards and compensation for labor in caring for the bees. Such a result is consistent with the trial court's findings and will not be disturbed by this court on appeal.

Judgment is affirmed.

EVANS, C. J., and GREEN, J., concur.