[No. 120-3. Division Three. July 13, 1970.]

THE STATE OF WASHINGTON, *Appellant,* v. RICHARD HITE, *Respondent.*

*Paul Klasen, Prosecuting Attorney,* for appellant.

*C. E. Hormel,* for respondent.

MUNSON, J.—The state appeals from the dismissal of the charges against respondent on five counts of grand larceny. Former jeopardy served as the basis for the court's action.

On April 2, 1969, respondent was originally charged with four counts of grand larceny under RCW 9.54.010(5).[1] One count was dismissed at the close of respondent's case for lack of evidence and respondent was acquitted of the remaining three. On June 4, 1969, respondent was charged with five counts of grand larceny under RCW 9.54.010(1).[2] Both informations involved the theft of leaf-cutter bee boards[3] from

---

[1]*Précis of First Information:*

Count 1: 23 bee boards, the property of Noble Hyde, on September 12, 1968.

Count 2: 26 bee boards, the property of Merlen Jenson, on September 11, 1968.

Count 3: 31 bee boards, the property of Thomas Ehart, on September 15, 1968.

Count 4: 12 bee boards, the property of Robert Erickson, on October 1, 1968.

[2]*Précis of Second Information:*

Count 1: bee boards in excess of $75, the property of Noble Hyde, on September 12, 1968.

Count 2: bee boards in excess of $75, the property of Robert Erickson, on September 12, 1968.

Count 3: bee boards in excess of $75, the property of Merlen Jenson, on September 12, 1968.

Count 4: bee boards in excess of $75, the property of Thomas Ehart, on September 1, 1968.

Count 5: bee boards in excess of $75, the property of Thomas Ehart, on August 30, 1968.

[3]Reference is made to *Johnson v. Miller,* 1 Wn. App. 956, 465 P.2d 423 (1970) describing leaf-cutter bee boards, their function and purpose.

the same farms, but the latter set forth three different dates than those originally alleged in the former.

During the first trial the state elicited testimony that respondent not only received the stolen goods but also was instrumental in planning their theft, arranging for their concealment, transportation and sale, and in at least one instance actively participating in their theft. With regard to the count dismissed, the state was unable to support its charges except by attempting to show the alleged theft was one incident in an overall scheme masterminded by respondent.

 Both article 1, section 9 of the Washington State Constitution and the fifth amendment to the United States Constitution, as applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969), provide that no person should twice be put in jeopardy for the same offense. One who asserts the bar of double jeopardy under either constitution must affirmatively establish (1) that he has previously been placed on trial for the same offense, and (2) that the court of the former trial was one of competent jurisdiction to hear and determine the merits of the case. *State v. Haye,* 72 Wn.2d 461, 464, 433 P.2d 884 (1967); *State v. Ridgley,* 70 Wn.2d 555, 556, 424 P.2d 632 (1967); *State v.*

[4]It is well established that the provision of the state constitution against double jeopardy shall be given the same interpretation as that given to the comparable provision in the federal constitution by the United States Supreme Court since the words used in both provisions are similar. *State v. Ridgley,* 70 Wn.2d 555, 556, 424 P.2d 632 (1967); *State v. Schoel,* 54 Wn.2d 388, 391, 341 P.2d 481 (1959). The philosophy of the double jeopardy provision of both constitutions is set forth in *Green v. United States,* 355 U.S. 184, 2 L. Ed. 2d 199, 78 S. Ct. 221 (1957) by Justice Black and quoted in *State v. Schoel, supra,* at 391 as follows:

"The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

Williams, 57 Wn.2d 231, 232, 356 P.2d 99 (1960).[4] Respondent's establishment of the second requisite is unquestioned. Thus, the sole issue before us is whether the taking of goods and the receiving, withholding or concealing of them are the same offense within the scope of the constitutional prohibition.

Although this jurisdiction follows the majority rule that double jeopardy exists only if the offenses are identical in law and fact, State v. Johnson, 60 Wn.2d 21, 24, 371 P.2d 611 (1962), we have long held the test of identity of offenses to be:

> "[Whether] the matter set out in the second indictment [was] admissible as evidence under the first indictment, and could a conviction have been properly maintained upon such evidence? If the answer is yes, then the plea is sufficient; otherwise, it is not." 1 Wharton, Criminal Law (11th ed.), § 393.

(Italics ours.) State v. Dye, 81 Wash. 388, 390, 142 P. 873 (1914).

It is well established that the Washington larceny statute is a consolidation of offenses for procedural purposes only and that each subsection thereof constitutes a separate and distinct offense. State v. Thompson, 68 Wn.2d 536, 538, 413 P.2d 951 (1966). However, respondent, relying upon State v. Carden, 50 Wn.2d 15, 308 P.2d 675 (1957) and State v. Holman, 58 Wn.2d 754, 364 P.2d 921 (1961), claims that evidence of taking was admissible in the first trial on the charges of receiving, withholding or concealing the bee boards and consequently a subsequent trial on charges of taking the same boards is barred by the prohibition against double jeopardy. Such reasoning, although inventive and containing an element of plausibility, is not infallible. It is the holding of a majority of jurisdictions that one cannot be both the principal thief and the receiver of stolen goods. Milanovich v. United States, 365 U.S. 551, 5 L. Ed. 2d 773, 81 S. Ct. 728 (1961); State v. Palkimas, 153 Conn. 555, 219 A.2d 220 (1966); Grimes v. State, 4 Md. App. 607, 244 A.2d 456 (1968); Anderson, 2 Wharton's Criminal Law & Procedure § 576 (1957); Perkins, Criminal Law § 6, at 275 (1957);

136 A.L.R. 1087 (1942). This distinction was not abrograted by *Carden* or *Holman* regardless of Justice Donworth's observation in his dissent to the former or the gratuitous dicta contained in *Carden* that a prosecutor may charge a thief under RCW 9.54.010(5) for receiving, withholding or concealing if the facts of the case warrant it. Given the facts of *Carden* and *Holman*, their holdings go only to the *use of evidence of taking to show respondent's knowledge that the goods were stolen*. Evidence of the respondent's act of actual stealing would not in itself be sufficient to sustain a conviction for receiving, concealing, or withholding stolen property since receiving, concealing or withholding are not inherent in evidence of taking. To allow the state to charge an individual under RCW 9.54.010(5) 'and introduce only evidence that the said defendant was the thief and no more, would be to allow him to be convicted of a crime other than that with which he was charged. Consequently, under the Dye test[5] the offenses charged are not identical in law.

■ Since the instant case has been on appeal, both the United States Supreme Court, in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, 1194 (1970), and our Court of Appeals, Division 2, in *State v. Harris*, 2 Wn. App. 272, 469 P.2d 937 (1970), have held collateral estoppel to be an integral part of the constitutional concept of double jeopardy. We agree.

As observed in *Ashe v. Swenson, supra,* at 443:

[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . .

. . . Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict

---

[5]See the following cases for applications of the Dye test: *Morgan v. Devine,* 237 U.S. 632, 59 L. Ed. 1153, 35 S. Ct. 712 (1915); *Waters v. United States,* 328 F.2d 739 (10th Cir. 1964); *Arnold v. United States,* 336 F.2d 347 (9th Cir. 1964).

upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame, and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579 [92 L. Ed. 180, 184, 68 S. Ct. 237, 240 (1948)]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

(Footnotes omitted.)

In the instant case, the prosecution frankly stated before this court that as to counts 1 and 2 of the second information the evidence he proposes to introduce in the second trial would in essence be identical to that offered originally (allowing for the difference in the dates relative to the Erickson count) and based upon the same theory which supported the charges set forth in counts 1 and 4 of the first information. Our review of the record satisfies us that this is also true as to count 3 of the second information. Consequently, counts 1, 2 and 3 of the second information fall within the doctrine of collateral estoppel as set forth above and the trial court's dismissal of these counts was correct. However, counts 4 and 5 of the second information which relate to the theft of Thomas Ehart's bee boards do not fall within the scope of this doctrine. Nothing in the record before us substantiates there was any evidence submitted at the previous trial relative to who took the Ehart bee boards or even as to respondent's actual connection with their receipt or concealment. Therefore, collateral estoppel is not applicable. As stated in *United States v. Kramer*, 289 F.2d 909, 916-17 (2d Cir. 1961):

The very nub of collateral estoppel is to extend *res judicata* beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, . . . to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial . . .

. . .

. . . collateral estoppel applies "when it is evident from the pleadings and record that determination of the fact in question was necessary to the final judgment [in the first case] and it was foreseeable that the fact would be of importance in possible future litigation."

The trial court's order of dismissal is affirmed as to counts 1, 2 and 3 of the second information and reversed as to counts 4 and 5. The cause is remanded for trial on those counts.

EVANS, C. J., and GREEN, J., concur.

Petition for rehearing denied September 4, 1970.

Review denied by Supreme Court October 22, 1970.