[No. 7163-7-I. Division One. January 28, 1980.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT D. ALFORD, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. TERRY LEE CLABORN, *Appellant*.

662

*Lewis Nomura* of *Seattle–King County Public Defender Association* and *Andrew Heinegg,* for appellants (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondents.

CALLOW, C.J.—Terry Claborn and Robert Alford were each convicted of first–degree assault, second–degree burglary, and first–degree theft, being counts 1, 2 and 3, respectively. Special findings that Claborn was armed with a deadly weapon and firearm as to counts 2 and 3, and that Alford was armed with a deadly weapon and firearm as to count 3 but not as to count 2, were also returned.

On the afternoon of July 26, 1978, Alford, Claborn and a third person purchased a .357 magnum and .22 caliber rifle. That evening they went to Iddings Farm Service. Claborn was armed with the .357 magnum and Alford carried a crowbar which they used to break into the tool shop. The third person stood guard with the .22 caliber rifle. They loaded tools and equipment into an old pickup belonging to Iddings and drove away with Claborn driving. The third person followed in an automobile.

A King County police officer pursued the truck when he noticed the taillights were not working. While Claborn drove in an evasive pattern, Alford began firing at the officer with the .22 caliber rifle. He then used Claborn's .357 magnum and continued firing. The chase ended when the pickup overturned. Claborn was arrested nearby and Alford was arrested several weeks later in California.

An issue raised by the defendant Claborn is the claim that he was not granted a timely trial under CrR 3.3. The evidence pertaining to that issue shows that trial was set for September 20, 1978. On September 19, 1978, the State

moved for a continuance to October 2, 1978, because the officer would be unavailable on account of out-of-state family business. The motion was granted for "good cause" shown.

On September 26, 1978, the State discovered that, contrary to earlier belief, Claborn's 60-day speedy trial period (CrR 3.3) was to expire on September 30, 1978. The State then moved for continuance until October 9, 1978, as the officer could not be reached. The court found good cause (witness unavailability) and that a continuance was required in the due administration of justice. It continued the trial to October 2, 1978, as previously ordered.

The issues presented are: (1) Did the trial court err in granting the State a continuance in violation of CrR 3.3 (Speedy Trial)? (2) Was there substantial evidence to submit the charge against Claborn of first-degree assault to the jury? (3) Can "possession of stolen property in the first degree" be the underlying felony to support a charge of first-degree assault? If so, was it reversible error to not instruct the jury as to all elements of "possession of stolen property"? (4) Does double jeopardy prevent a burglary and theft, arising from the same transaction, from both being enhanced by firearm (RCW 9.41.025) and deadly weapon (RCW 9.95.040) allegations? (5) Should the jury have been instructed as to the burden of proof for the firearm and deadly weapon allegations? (6) Were the jury's special findings as to the firearm and deadly weapon allegations with respect to Alford irreconcilably inconsistent?

We turn to the first issue concerning whether the trial court granted the State a continuance in violation of CrR 3.3 (Speedy Trial). Claborn argues that the trial court must set forth its reasons, not bare conclusions, supporting the exercise of its discretion, *State v. Jack,* 87 Wn.2d 467, 553 P.2d 1347 (1976), and the record must reflect facts which support the conclusions required by the rule. *State v. Walker,* 16 Wn. App. 637, 557 P.2d 1330 (1976). The State argues that it exercised due diligence by subpoenaing the King County police officer, *State v. Yuen,* 23 Wn. App. 377,

597 P.2d 401 (1979), and that the State's showing of witness unavailability was good cause upon which the trial court exercised its discretion in continuing the case.

 The granting or denial of a continuance rests within the sound discretion of the trial court and is reviewable on appeal only for manifest abuse of discretion. *State v. Eller,* 84 Wn.2d 90, 524 P.2d 242 (1974); *State v. Yuen, supra. See also Dearinger v. United States,* 468 F.2d 1032 (9th Cir. 1972); *State v. Baker,* 4 Wn. App. 614, 483 P.2d 642 (1971). CrR 3.3(e) provided in part:[1]

Continuances or other delays may be granted as follows:

. . .

(2) On motion of the prosecuting attorney if:

. . .

(ii) the state's evidence is presently unavailable, the prosecution has exercised due diligence, and there are reasonable grounds to believe that it will be available within a reasonable time; or

(iii) required in the due administration of justice and the defendant will not be substantially prejudiced in the presentation of his defense.

It was undisputed that the officer was out of state and unavailable. As the victim of the assault, the materiality of his testimony is self-evident. The State complied with the basic requirement of due diligence as the officer was under subpoena. *State v. Yuen, supra.*

The trial court found there was no showing that a 2–day extension of the 60–day period would prejudice Claborn. The trial court also found that the unavailability of an essential witness justified the continuance. Upon this record, we are precluded from holding that the court's exercise of discretion was upon a ground, or to an extent, clearly untenable or manifestly unreasonable. *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972); *State v. Yuen, supra.*

---

[1]Effective November 17, 1978, the Supreme Court amended CrR 3.3, deleting this language. 90 Wn.2d 1149, 1152. The amendment does not affect the outcome herein.

The second issue raised is whether there was substantial evidence to submit the charge against Claborn of first-degree assault to the jury. Claborn argues that the evidence only shows that he drove the truck and that there is no evidence of an overt act from which it could be inferred that he counseled, encouraged or aided Alford so as to be an accomplice to the assault. RCW 9A.08.020(3). *In re Wilson,* 91 Wn.2d 487, 588 P.2d 1161 (1979). The State argues that Claborn's elusive getaway driving coupled with Alford's use of Claborn's gun was substantial evidence from which the jury could conclude that Claborn aided and abetted the assault. *State v. Young,* 89 Wn.2d 613, 574 P.2d 1171 (1978).

■ A motion to dismiss at the close of the State's case challenges the sufficiency of the evidence to take the case to the jury. In reviewing a ruling on such a challenge we must assume the truth of the State's evidence and view it most strongly against the defendant and in a light most favorable to the State. *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971). All reasonable inferences must be drawn in favor of the State. *State v. Randecker, supra.*

■ Claborn challenges the court's ruling that there was substantial evidence that he was an accomplice under RCW 9A.08.020. Under RCW 9A.08.020 a person is an accomplice where he knowingly "solicits, commands, encourages, or requests" the commission of a crime, or aids in the planning or commission thereof. Mere presence at the scene of a crime is not enough. *In re Wilson, supra.* There must be evidence that the defendant participated in the undertaking and sought, by his action, to make it succeed. *In re Wilson, supra; State v. J-R Distribs., Inc.,* 82 Wn.2d 584, 512 P.2d 1049 (1973), *cert. denied,* 418 U.S. 949, 41 L. Ed. 2d 1166, 94 S. Ct. 3217 (1974). From the evidence the jury could have inferred that Alford and Claborn purchased the guns to facilitate the flight from the burglary and theft. From Claborn's evasive driving and the fact that Alford used the .357 magnum originally in Claborn's possession, the jury could have concluded that Claborn actively aided

the commission of the assault. That the jury might have drawn other inferences more favorable to Claborn is immaterial.

The third issue presented is whether "possession of stolen property in the first degree" can be the underlying felony to support a charge of first–degree assault, and if so, was it reversible error to not instruct the jury as to all elements of "possession of stolen property." Claborn argues that RCW 9A.36.010 creates a felony–assault rule akin to the felony–murder rule, and because there was no causal relation between the "passive" felony of possession of stolen property and the assault, it was improperly applied.[2] *State v. Diebold,* 152 Wash. 68, 277 P. 394 (1929). Claborn also relies on felony–murder cases from other jurisdictions to argue that a crime not inherently dangerous to human life, *i.e.,* possession of stolen property, cannot be the basis of first–degree assault. The State argues that there was a causal connection between the felony alleged and the assault because the assault occurred in furtherance of the felony. The State also argues that the statute does *not* require the felony to be "inherently dangerous."

■ The jury was instructed pursuant to RCW 9A.36.010 that a person is guilty of assault in the first degree when he assaults another with a firearm, or any deadly weapon, with intent to (1) kill a human being, or (2) commit a felony upon the property of the one assaulted or another. The felony alleged by the State was possession of stolen property of a value in excess of $1,500. RCW 9A.56.150. Claborn argues that there must be a close causal connection between the assault and the alleged felony. The defendant Claborn relies on felony–murder rule analysis, particularly that found in W. LaFave & A. Scott, *Handbook on Criminal Law* 555–57 (1972). We reject Claborn's argument. Even were we to accept the analogy between the felony–murder

---

[2]Claborn concedes that had the burglary or theft been the underlying felony the State's case would be much stronger.

rule and RCW 9A.36.010, the necessary close causal connection is present. As stated by W. LaFave & A. Scott, *supra,* at page 557:

> One who carries booty is often more in need of a homicide to effect an escape than one who does not. Thus where a robber, carrying in his car the fruits of his robbery, is stopped by a policeman for speeding some time after and some distance away from the place of robbery and he shoots the policeman to death to prevent his discovery of the stolen goods, the causal connection between the robbery and the homicide is quite close.

(Footnote omitted.)

We also find no support for Claborn's argument that RCW 9A.36.010 only applies to felonies that are inherently dangerous. The language of the statute is unambiguous and contains no such requirement.

Alford next argues that because "possession of stolen property" was not charged, the jury was not instructed as to its elements and could not properly find that he committed the felony of "possession of stolen property."

■ The jury was not instructed that "possession of stolen property" requires proof of knowledge. RCW 9A.56.140. Failure to instruct as to a necessary element is ordinarily reversible error. *State v. McHenry,* 13 Wn. App. 421, 535 P.2d 843 (1975), *aff'd,* 88 Wn.2d 211, 558 P.2d 188 (1977). Here, however, the jury did find, beyond a reasonable doubt, that Alford and Claborn were guilty of theft with regard to the property. This finding is equivalent to a finding that, beyond a reasonable doubt, they knew the property to be stolen.

The fourth issue raised is whether double jeopardy prevents a burglary and theft, arising from the same transaction, from being separately enhanced by firearm (RCW 9.41.025) and deadly weapon (RCW 9.95.040) allegations. Claborn argues that double jeopardy prevents him being twice punished for possession of a firearm where the underlying crimes, burglary and theft, arose from the same transaction. The State argues that the burglary and theft

are separate crimes requiring proof of different facts and therefore, a fortiori, each separate crime could be enhanced with firearm and deadly weapon findings.

■ A person is not subjected to double jeopardy because two charges arose from the same incident unless the evidence required to support a conviction on one of them would have been sufficient to warrant a conviction on the other. *State v. Roybal*, 82 Wn.2d 577, 512 P.2d 718 (1973). Burglary and theft are two separate and distinct offenses each containing elements not found in the other. The special verdicts returned pursuant to RCW 9.41.025 and RCW 9.95.040 did not create separate offenses but merely limited the discretion of the trial court and Board of Prison Terms and Paroles in sentencing. *State v. Hattori*, 19 Wn. App. 74, 573 P.2d 829 (1978). There was no double jeopardy violation. *State v. Harp*, 13 Wn. App. 239, 534 P.2d 842 (1975).

The fifth issue presented is whether the jury should have been instructed as to the burden of proof for the firearm and deadly weapon allegations. Claborn argues that burden of proof as to the firearm and deadly weapon allegations should be beyond a reasonable doubt and that the trial court made an error of constitutional magnitude in failing to so instruct. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). The State argues that as a whole the instructions informed the jury that the State's burden of proof was beyond a reasonable doubt and, in any event, the beyond a reasonable doubt standard does not apply because the special allegations enhance punishment but do not constitute independent crimes.

■ Claborn raises for the first time on appeal the trial court's failure to explicitly instruct the jury that the firearm and deadly weapon findings require proof beyond a reasonable doubt. Objections to instructions not presented to the trial court will not be considered on appeal except in the case of obvious and manifest injustice. *State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966), *cert. denied*, 386 U.S. 1042, 18 L. Ed. 2d 610, 87 S. Ct. 1501 (1967). Claborn relies on

RAP 2.5 which allows review of a "manifest error affecting a constitutional right."

■ All jury instructions are to be read in light of all other instructions, and it is presumed that a jury reads and follows the court's instructions as a whole. *State v. Jamerson,* 74 Wn.2d 146, 443 P.2d 654 (1968); *State v. Willis,* 67 Wn.2d 681, 409 P.2d 669 (1966). Instructions Nos. 3, 13,14, 20, 22, 25, 26, 30 and 31 informed the jury of the reasonable doubt standard. No different burden of proof appears elsewhere in the court's instructions. The error claimed is therefore not one of "obvious and manifest injustice," *State v. Louie, supra,* requiring review in absence of any objection below.

The sixth and final issue presented is whether the jury's special findings as to the firearm and deadly weapon allegations with respect to Alford were irreconcilably inconsistent. Alford argues that the burglary and theft were committed at the same time and therefore, under the evidence, the finding that he was armed at the time of the theft but not at the time of the burglary were irreconcilably inconsistent. The State replies that the jury could have concluded that Alford carried only the crowbar at the time of the burglary but was later armed with a gun during the theft.

We find no irreconcilable inconsistency. There was evidence that Alford entered the building with a crowbar while a third person remained outside with the .22 caliber rifle. The burglary was complete once he entered the house with the felonious intent. The theft, however, continued after he left the building, loaded the pickup and drove away. The jury could have reasonably concluded that Alford was armed during the theft but not at the time of the burglary.

The judgment is affirmed.

JAMES and DORE, JJ., concur.

Reconsideration denied March 21, 1980.

Review granted by Supreme Court August 15, 1980.