[No. 20783-1-I.   Division One.   December 11, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIAM ROOSEVELT CARTER, *Appellant.*

WINSOR, J., dissents by separate opinion.

*Jesse W. Barton* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marilyn Nowogroski, Deputy,* for respondent.

GROSSE, A.C.J.—William R. Carter, Jr. (Carter) appeals his conviction of first degree assault. Carter was originally charged with first degree robbery, but his trial on this count resulted in a hung jury mistrial. On retrial the prosecution was allowed to amend the information to one of first degree assault.

The issue on appeal is whether Carter was deprived of effective assistance of counsel because his counsel failed to raise a mandatory joinder objection under CrR 4.3(c)(3) at the time the prosecution made a motion to amend and/or change the charge from one of first degree robbery to one of first degree assault. Alternatively, he argues that he received ineffective assistance because his counsel failed to raise a speedy trial objection under CrR 3.3, again after the prosecutor moved to amend the charge to one of assault.

We must first look to the alleged errors that Carter claims form the basis for the claim of ineffective assistance of counsel.[1]

---

[1]The purpose of the requirement of effective counsel is to ensure that there has been a fair and impartial trial. *State v. Thomas,* 109 Wn.2d 222, 743 P.2d 816 (1987). The test in Washington is, after looking at the entire record, whether the accused was afforded effective representation and a fair and impartial trial. *State v. Thomas, supra; In re Richardson,* 100 Wn.2d 669, 675 P.2d 209 (1983).

The State of Washington follows the 2–pronged standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), which states:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*See State v. Thomas, supra* at 225–26; *see also State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied,* 479 U.S. 922 (1986); *State v. Sardinia,* 42 Wn. App. 533, 713 P.2d 122, *review denied,* 105 Wn.2d 1013 (1986).

The *Strickland* test, as adopted by the Washington court, requires that an appellant show that counsel's representation fell below an objective standard of reasonableness when looking at all the circumstances. *Strickland,* at 694; *Thomas,*

CrR 4.3(c)(1) defines "related offenses" as follows:[2]

> Two or more offenses are related offenses, for purposes of this rule, if they are within the jurisdiction and venue of the same court and are based on the same conduct.

The State concedes the two charges here, the first degree robbery and the first degree assault, are based on the same conduct and that the offenses were "related"[3] as resulting from that conduct. Thus, the question is the scope of CrR 4.3(c)(3).[4]

Our analysis must begin with *State v. Russell*, 101 Wn.2d 349, 678 P.2d 332 (1984). *Russell* holds that the discharge of a hung jury on a criminal charge does not bar a retrial on the *same charge* and further holds that for purposes of CrR 4.3, a defendant has been "tried" when the issue has been submitted to the jury but a mistrial declared, thus leaving

---

at 226. The proper context for the court's inquiry is the record of the trial court viewed as a whole. As to the first prong of the test, there is a strong presumption of reasonableness, and adequate assistance of counsel. *Sardinia*, at 539. The second prong requires the defendant show there is a "reasonable probability" that, but for counsel's conduct or errors, the results of the proceeding would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, at 694.

[2]The definition of "related offenses" under CrR 4.3(c)(1) is less restrictive than the definition under 2 American Bar Ass'n, *Standards for Criminal Justice*, Std. 13–1.2 (2d ed. 1982), which reads: "Two or more offenses are related offenses if they are based upon the same conduct, upon a single criminal episode, or upon a common plan."

[3]The State concedes this point in its brief at page 8.

[4]CrR 4.3 provides for the dismissal of a criminal charge if the defendant has been previously tried on a related charge.

There are few Washington cases interpreting this rule. However there is an evident similarity between CrR 4.3 and the *ABA Standards Relating to Joinder and Severance* §§ 1.1–1.3 (Approved Draft, 1968). A resort to the ABA standards on this rule is appropriate because of the paucity of cases on the rule and its purpose. *See State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976); *State v. Parmele*, 87 Wn.2d 139, 550 P.2d 536 (1976). Referring to the ABA standards, the purpose of this rule is to protect defendants from successive prosecutions based upon essentially the same conduct. *See ABA Standards Relating to Joinder and Severance* 19 (Approved Draft, 1968).

the issue of guilt or innocence unresolved.[5] *Russell* states that its analysis of CrR 4.3 is based on the rationale of "issue preclusion", *Russell*, 101 Wn.2d at 353 (citing *State v. Anderson*, 96 Wn.2d 739, 638 P.2d 1205, *cert. denied*, 459 U.S. 842 (1982), and *State v. Dailey*, 18 Wn. App. 525, 569 P.2d 1215 (1977)). *Russell* also cites to the *ABA Standards Relating to Joinder and Severance* 19 (Approved Draft, 1968) which state in part:

> "[T]he purpose of this section of the standards is to protect defendants from 'successive prosecutions based upon essentially the same conduct, whether the purpose in so doing is to hedge against the risk of an unsympathetic jury at the first trial, to place a "hold" upon a person after he has been sentenced to imprisonment, or simply to harass by multiplicity of trials.'"

*Russell*, 101 Wn.2d at 353 n.1.

CrR 4.3(c)(3) provides:

> A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense . . .. The motion to dismiss must be made prior to the second trial, and *shall be granted* unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, *the ends of justice would be defeated if the motion were granted.*

(Italics ours.)

---

[5]The State in its brief attempts to reargue the case of *State v. Russell, supra,* which established that a hung jury mistrial is a trial for the purposes of CrR 4.3(c)(3). The State requests this court to overturn *Russell*. *Russell* is a Washington State Supreme Court case and this court and all lower state courts are bound by that ruling until the State Supreme Court overrules it. *State v. Gore*, 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984); *State v. Knapp*, 54 Wn. App. 314, 318, 773 P.2d 134 (1989). Therefore, even though it is difficult to accept the rationale of issue preclusion in a case where no final determination of an issue is made, we cannot accept the argument of the State as to the effect of a hung jury mistrial because that issue has been determined by the Supreme Court in *Russell*, which we are constrained to follow.

Thus, dismissal of the amended information is mandated by the State's failure to comply with CrR 4.3.[6] While the State concedes the offenses are related, it asserts that any motion for dismissal would probably have been denied under CrR 4.3(c)(3) because "the ends of justice would have been defeated" if the motion had been granted and the assault charge dismissed. We disagree.

The term "ends of justice" has not been defined or explained by case law in this jurisdiction. The ABA standards and commentary on joinder of offenses and defendants provide that the test for determining what the consequences for failure to join related offenses is:

> [T]he same test as that concerning whether joinder should be required, as set forth in subsection (b) of the [ABA] standard [*see* CrR 4.3(b)]. This being so, there is nothing to be gained by a prosecutor deferring or concealing charges of related offenses prior to the first trial. If the defendant knows before the first trial that related offenses have been charged and he makes the appropriate motion, the offenses are merely joined; if the defendant does not have this knowledge before the first trial, the defendant's subsequent motion will bar prosecution of related offenses in *every* case in which the offenses would have been joined but for the prosecutor's failure to charge or to apprise the defendant of the charge. Also, the prosecutor is discouraged from deferring or concealing charges of related offenses under the provisions of section 1.3 in that notification to the defendant that several related offenses have been charged puts the burden on him to move for joinder. As [previously] discussed . . ., there are several reasons why a defendant might not so move [for joinder under CrR 4.3(b)]; by contrast, there does not appear to be any reason why a defendant would fail to move for dismissal under section 1.3(c) [CrR 4.3(c)].

*ABA Standards Relating to Joinder and Severance* § 1.3(c), Commentary at 23–24 (Approved Draft, 1968).

---

[6]We note, however, that the State is allowed to retry Carter on the original first degree robbery charge or any lesser included offenses. *See State v. Anderson,* 96 Wn.2d 739, 742–44, 638 P.2d 1205, *cert. denied,* 459 U.S. 842 (1982).

■■ The State argues that the trial court "probably" would not have granted a motion to dismiss the amendment under CrR 4.3 because CrR 2.1(e) allows amendment of any information "at any time before verdict or finding if substantial rights of the defendant are not prejudiced." The State points out that because the trial court allowed amendment of the information under CrR 2.1 at the beginning of the second trial, it follows that the trial court necessarily found the substantial rights of the defendant were not prejudiced. *See* CrR 2.1(e).[7] We would agree but for the fact we must interpret the rules of the court in concert with each other to give meaning to each rule. To agree with this argument would obviate CrR 4.3. That rule necessarily limits the broad application of CrR 2.1(e) as interpreted by the State. In short, if an amendment invokes an uncharged or not joined related offense as contemplated by CrR 4.3, then a "substantial right of the defendant" is prejudiced.

Neither the ABA standards nor the case law concerning CrR 4.3 help in an "ends of justice" analysis.[8] For want of a better analogy we turn to the rationale adopted by the

---

[7]CrR 2.1(e) states as follows:

"**(e) Amendment.** The court may permit any information or bill of particulars to be amended at any time before verdict or finding if substantial rights of the defendant are not prejudiced."

[8]The ABA standards briefly discuss the "ends of justice" exception by saying the prosecutor will not be substantially disadvantaged if for some reason the related offense known to him was not charged prior to the first trial. This is because he can seek denial of the motion to dismiss under the "ends of justice" exception. The standards do not discuss or suggest any test or standard for determining what the "ends of justice" might be. However, the standards go on to contrast the ability of the prosecutor to argue an "ends of justice" exception with the Model Penal Code § 1.07, where the prosecutor might obtain severance of related offenses by raising the issue before the first trial and satisfy the court that "justice so requires," but points out that under the code there is no comparable way in which, after one trial has been held, the prosecutor can argue that another trial should be permitted on a related offense of which he was aware before the first trial. *See ABA Standards Relating to Joinder and Severance* § 1.3(c), Commentary at 24 (Approved Draft, 1968).

Washington case law interpreting CrR 4.3, but not discussing the "ends of justice" exception are *State v. Russell, supra,* and *State v. Dailey, supra.*

United States Supreme Court under the Federal Rules of Civil Procedure (Fed. R. Civ. P. 60(b)(6)), *see Ackermann v. United States,* 340 U.S. 193, 200, 95 L. Ed. 207, 71 S. Ct. 209 (1950); and in turn the state courts under CR 60(b), specifically CR 60(b)(11), *see State v. Keller,* 32 Wn. App. 135, 140, 647 P.2d 35 (1982); *see also In re Adoption of Henderson,* 97 Wn.2d 356, 360, 644 P.2d 1178 (1982). CR 60(b)(11) allows relief from a judgment for "[a]ny other reason justifying relief from the operation of the judgment". This rule is identical to Fed. R. Civ. P. 60(b)(6). The United States Supreme Court held in *Klapprott v. United States,* 335 U.S. 601, 615, 93 L. Ed. 266, 69 S. Ct. 384 (1949) that this rule "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." However, "extraordinary circumstances" must be shown to exist to gain relief under Fed. R. Civ. P. 60(b)(6). *Ackermann,* 340 U.S. at 200. Washington has applied a similar "extraordinary circumstances" standard to CR 60(b)(11) motions. *In re Marriage of Flannagan,* 42 Wn. App. 214, 221, 709 P.2d 1247 (1985), *review denied,* 105 Wn.2d 1005 (1986) (citing *State v. Keller,* 32 Wn. App. 135, 647 P.2d 35 (1982)).

  Using this analogy we hold that to invoke the "ends of justice" exception of CrR 4.3(c)(3), the State must show there are "extraordinary circumstances" warranting its application. In the case at bar, the State has not shown that the facts and circumstances here are such that they qualify as "extraordinary circumstances". In fact the State has merely made a bald assertion, without any supporting argument or authority, that to allow the dismissal of the amended charge would "defeat the ends of justice." We disagree. While we can conceive of a scenario where through no fault on its part the granting of a motion to dismiss under the rule would preclude the State from retrying a defendant or severely hamper it in further prosecution, such is not true here. The State can retry Carter on the original charge. Under CrR 4.3(c)(3) and *Russell,* failure to at least charge the related offense, or join it

before the first trial and resulting mistrial mandates dismissal of the related charge.

█ This appeal is brought on the issue of ineffective assistance of counsel. The failure to assert a proper defense has previously been held to establish ineffective assistance of counsel. *See State v. Thomas,* 109 Wn.2d 222, 226–27, 743 P.2d 816 (1987). Certainly, the failure to argue a rule requiring dismissal in the face of a motion to amend is an omission of equal or greater magnitude. The fact that counsel did not make a motion to dismiss pursuant to CrR 4.3(c)(3) cannot be characterized as a tactical decision or one of trial strategy. There was no advantage to be gained from defending a first degree assault charge as opposed to a first degree robbery charge, especially considering the latter charge initially resulted in a hung jury mistrial. Additionally, the penalty for assault could be, and indeed was, more harsh. Given the facts of the case, the first degree robbery was more difficult to prove, a circumstance benefiting the defense. An attorney is presumed to know the rules of the court. The record also reflects that counsel did resist the amendment of the information, but obviously did not know of or consider bringing a motion under CrR 4.3(c)(3). Carter's showing that counsel failed to bring on a motion to dismiss for failure to join the assault charge in the first trial was sufficient to demonstrate that counsel's representation was not sufficient.

Under *Strickland* we must still ascertain whether the deficient performance was so serious or prejudicial as to deprive Carter of a fair trial. Prejudice resulting from ineffective representation is established when the defendant shows that there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceeding would have been different. *Thomas,* 109 Wn.2d at 226. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Italics omitted.) *Thomas,* 109 Wn.2d at 226 (quoting *Strickland,* 466 U.S. at 694). It is not necessary that a defendant "show that

counsel's deficient conduct more likely than not altered the outcome in the case.'" *Thomas,* 109 Wn.2d at 226 (quoting *Strickland,* 466 U.S. at 693).

Here, Carter was tried for first degree robbery in the first trial, but the trial resulted in a hung jury. Under *Russell* he was "tried" for the purposes of CrR 4.3(c)(3). In the second trial, the prosecution charged him, by amending, and in effect completely changing, the charge to one of first degree assault. The new charge was within the jurisdiction and venue of the first court, *see State v. Fladebo,* 53 Wn. App. 116, 118–19, 765 P.2d 1310 (1988), *aff'd,* 113 Wn.2d 388, 779 P.2d 707 (1989); *accord, Dailey,* 18 Wn. App. at 527, and was based on the same conduct as the charge in the first trial. The facts and circumstances of this case do not justify the State's failure to join the assault charge with the robbery charge before the first trial under the "ends of justice" exception to CrR 4.3(c)(3).

Had counsel made the motion to dismiss, unless the prosecution could have come up with better reasons for its decision not to originally charge the assault, as it had all the facts and evidence at hand at that time, the motion would have been granted as a matter of law. *See Dailey,* 18 Wn. App. at 527; CrR 4.3(c)(3); *see also ABA Standards Relating to Joinder and Severance* § 1.3, Commentary at 23–24 (Approved Draft, 1968). We cannot second guess what the prosecutor would have argued, nor can we know how the trial court would have ruled, had the motion been made. However, considering the mandatory nature of the rule, combined with the facts and circumstances of this case, our confidence in the outcome is sufficiently undermined to warrant application of the prejudice element of the *Strickland* and *Thomas* cases on ineffective assistance of counsel. We therefore hold that Carter was prejudiced by his counsel's deficient performance. *See Thomas,* 109 Wn.2d at 229.

Because Carter was denied effective assistance of counsel, the conviction on the assault charge must be reversed and

the case remanded to the trial court for action consistent with this opinion.[9]

WEBSTER, J., concurs.

WINSOR, J. (dissenting)—The majority concludes that Carter was deprived of effective assistance of counsel because defense counsel failed to make a motion to dismiss under CrR 4.3(c)(3) at the beginning of the second trial on the assault charge. Because the majority converts the *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) test for effective assistance of counsel from an inquiry into whether counsel's representation fell below an objective standard of reasonableness to a standard requiring counsel to have a perfect understanding of the interplay between court rules and case law, I must dissent from the majority's holding.

The test to determine whether an accused has been effectively represented by counsel is correctly set out in footnote 1 of the majority opinion. Majority, at 218–19. *Strickland* requires the appellant to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To meet this burden, an appellant must demonstrate that "counsel's representation fell below an objective standard of reasonableness" when looking at all the circumstances. *Strickland,* 466 U.S. at 688; *State v. Thomas,* 109 Wn.2d 222, 225–26, 743 P.2d 816 (1987).

In deciding as a matter of law that defense counsel's performance in this case fell below an objective standard of reasonableness, the majority concludes that counsel should have known that: (1) although a trial that results in a hung jury mistrial does not always constitute "jeopardy" for double jeopardy purposes, such that a defendant may be

---

[9]Because we resolve this appeal on the ineffective assistance of counsel grounds, we need not address the other arguments forwarded by the appeal.

retried on the same charges, *State v. Jones,* 97 Wn.2d 159, 163, 641 P.2d 708 (1982), it will constitute a "trial" for the purposes of CrR 4.3(c)(3), *State v. Russell,* 101 Wn.2d 349, 353, 678 P.2d 332 (1984); (2) the assault, as charged by amended information at the beginning of the second trial, and the robbery were "related offenses" within the meaning of CrR 4.3(c)(1), *see Russell,* 101 Wn.2d at 352–53; and (3) defense counsel could have successfully moved to dismiss the assault charge under CrR 4.3(c)(3) at the beginning of the second trial, when the prosecutor chose to charge the lesser–included crime of assault rather than the original charge of robbery.

In *Strickland,* the Supreme Court recognized the inherent difficulties of assessing at the appellate level the requisite degree of knowledge and skill an attorney should be required to exhibit at trial:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second–guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]

(Citation omitted.) *Strickland,* 466 U.S. at 689. Absent a persuasive showing by appellant in this case that the average criminal lawyer would have knowledge of the three points of law as charged by the majority, I would "indulge a strong presumption" in favor of the reasonableness of defense counsel's conduct.

The majority hinges its conclusion on the strength of its statement that "[a]n attorney is presumed to know the rules of the court." Majority, at 224. Surely a lawyer is not charged with having all the rules and all possible interpretations of those rules in mind at all times. If the issue before us were an obvious legal error, such as a lawyer

allowing the statute of limitations to run without commencing suit in a civil matter, I would have no qualms in ruling on whether counsel's performance fell below a requisite level of reasonableness, as a matter of law from the appellate bench. The error in this case, however, is not so obvious: this case involves an unusual set of facts requiring knowledge of infrequently used court rules with even less frequently used constructions of those rules. Apparently, neither counsel below or the trial judge had this requisite knowledge.

By disagreeing with the majority's conclusion, I do not assume that defense counsel's actions in this case necessarily fell within the acceptable standard of practice to meet Sixth Amendment concerns. Rather, the question is of sufficient complexity to warrant further investigation by the trial court. In actions for medical, legal, architectural and other professional malpractice, the plaintiff is required to present expert testimony as to the standard of practice.[10] We ought to require no less here.

Certainly, the Sixth Amendment requirements for effective assistance of counsel merit special concern to ensure that the accused received a fair and impartial trial. *Thomas,* 109 Wn.2d at 225. But to successfully claim ineffective assistance of counsel, the defendant has the burden of making the requisite showing. *See Thomas,* 109 Wn.2d at 225–26. That burden cannot be met without a more in-depth inquiry into the reasonableness of counsel's actions than can be conducted on the appellate level. I would remand to the trial court for a determination of whether

---

[10]That is not to say, however, that every defendant claiming ineffective assistance of counsel need present expert testimony. Unlike medical and other professional malpractice cases in which a nearly blanket rule mandates expert testimony as to the violation of standard of practice, in some cases involving the evaluation of effective assistance of counsel, judges will be able to make the determination without need for expert testimony. Such is not the case here.

counsel's performance fell below the Sixth Amendment reasonableness standard.