[No. 61999-9.   En Banc.   April 27, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. PEARL DALLAS, *Petitioner*.

*Lise Ellner* and *Matthew R. Miller* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Ann Foerschler, Deputy,* for respondent.

JOHNSON, J. — This case involves the issue of the proper remedy for an untimely amendment of an information. Pearl "Kandi" Dallas was charged in juvenile court with third degree possession of stolen property. At the conclusion of its case, the State moved to amend the stolen property count to third degree theft. The trial court granted the motion and found Dallas guilty. On appeal, the State conceded the amendment was improper. The Court of Appeals vacated the theft conviction and remanded *without* prejudice to the State's right to refile. Dallas appealed to this court, arguing the dismissal should have been *with* prejudice. We agree and reverse.

## FACTS

Kandi Dallas and Tia Weiss (Tia) were friends. In February of 1991, Tia, age 13, had an argument with her mother and ran away to 14-year-old Kandi's home in Seattle's central area. Because Tia had left without clothing, she and Kandi returned to her house in north Seattle to get personal items. While there, Kandi took a Walkman cassette tape player and tape belonging to Tia's sister. Back at Roosevelt High School, Tia noticed Kandi had the tape player and asked for it back. Kandi gave it back to Tia without the tape.

While Tia was with Kandi, Pearlene Christoper, Kandi's mother, called Katheryn Weiss (Weiss), Tia's mother, several times. On the final telephone call, she gave Weiss her address. Weiss then drove to the Christoper-Dallas apartment where she found the girls hiding in a bedroom closet.

Weiss demanded Tia accompany her home and the two began taking Tia's clothes and personal items to the car.

According to Kandi and Tia, some of Kandi's tapes were inadvertently taken by Tia, and Tia was wearing Kandi's coat. Kandi accompanied Tia and Weiss with the last load in order to get her coat back.

At the car, Kandi told Tia to run and both girls did. Weiss pursued them, grabbing the hood of the jacket Tia was wearing. Tia fell and her mother tripped over her. A scuffle ensued in which Kandi hit and kicked Weiss. While Kandi claimed at trial she was defending Tia, the court found her guilty of assault. This conviction was not appealed.

As a result of this incident, Kandi was also charged with third degree possession of stolen property — the Walkman and tape. At trial, the State moved to amend the information to delete the possession of stolen property charge and substitute third degree theft. The motion came at the close of the State's case. The commissioner allowed the amendment.

In her defense, Kandi testified she had returned the Walkman but was holding the tape until her own tapes were returned. The commissioner found Kandi guilty of theft. Although the Walkman had been returned to the Weiss home with Tia, the court found Kandi had taken it without permission and without the intention of returning it.

On appeal, the State conceded the untimely nature of its amendment. The sole issue then became the remedy. The Court of Appeals held the conviction was reversed without prejudice to refile. *State v. Dallas*, No. 30334-1-I, slip op. at 2 (May 31, 1994) (per curiam). Dallas appealed to this court, contending the Court of Appeals decision conflicts with *State v. Pelkey*, 109 Wn.2d 484, 745 P.2d 854 (1987).

## ANALYSIS

Washington case law is settled that the State may not amend a criminal charging document to charge a different crime after the State has rested its case unless the amended charge is a lesser degree of the same charge or a lesser included offense. *See State v. Vangerpen*, 125 Wn.2d 782, 888 P.2d 1177 (1995). However, the remedy for this violation

continues to be a question, at least in some procedural contexts.[1]

*Pelkey* involved a criminal charge of bribery which was amended to trading in special influence. We held the appropriate remedy for the improper amendment of the information was dismissal with prejudice. We based our holding on CrR 4.3, the mandatory joinder rule. The rule provides:

> A defendant who has been tried for one offense may thereafter move to dismiss a charge for a related offense, unless a motion for joinder of these offenses was previously denied or the right of joinder was waived as provided in this rule. The motion to dismiss must be made prior to the second trial, and shall be granted unless the court determines that because the prosecuting attorney was unaware of the facts constituting the related offense or did not have sufficient evidence to warrant trying this offense at the time of the first trial, or for some other reason, the ends of justice would be defeated if the motion were granted.

CrR 4.3(c)(3). Because the two charges were related and could have been joined in the original information, we found that, in a subsequent trial for trading in special influence, the charge would be subject to dismissal under the rule. *Pelkey*, 109 Wn.2d at 491. Therefore, rather than wait for a second appeal, we dismissed with prejudice. *State v. Pelkey, supra.*

Our decision in *Pelkey* relied on *State v. Anderson*, 96 Wn.2d 739, 638 P.2d 1205 (*Anderson II*), *cert. denied*, 459 U.S. 842 (1982). Anderson was originally charged and found guilty of first degree murder by the alternative means of extreme indifference to human life. *State v. Anderson*, 94 Wn.2d 176, 616 P.2d 612 (1980) (*Anderson I*). Because we found the "extreme indifference" alternative could not apply on the facts of the case, we dismissed without prejudice to refile. *Anderson I*, 94 Wn.2d at 192. Although the State could

---

[1]There are at least four distinct problems with informations that may cause the State to seek amendment: (1) failure to state any crime at all because an essential element is omitted, (2) naming a higher crime but omitting an essential element so that only the lesser included is sufficiently charged, (3) charging the wrong crime to conform to the evidence, and (4) charging the wrong alternative means of committing a crime, given the evidence. Only the latter two are affected by the mandatory joinder rule.

have refiled a lesser included charge, it again charged first degree murder but under a different alternative means. *Anderson* II, 96 Wn.2d at 743. We dismissed the second first degree murder charge because it violated the mandatory joinder rule. *Anderson* II, 96 Wn.2d at 740-41.

*Anderson* II made two distinctions of importance to the present case. The first is between double jeopardy and mandatory joinder. Anderson petitioned the court to dismiss his second charge based on double jeopardy. The court found double jeopardy was not implicated but mandatory joinder was. *Anderson* II, 96 Wn.2d at 740.

The second important distinction made by the *Anderson* II court was between lesser included crimes and alternative means of committing the same crime. The mandatory joinder rule prohibits the filing of new charges based upon an alternative means of committing first degree murder because these means could have been charged in the original information. *Anderson* II, 96 Wn.2d at 741. Lesser included crimes, on the other hand, need not be charged at all. RCW 10.61.006. Based on the facts in *Anderson* I, the trial court could have dismissed the first degree murder charge as inapplicable to the facts of the case, but proceeded to verdict on a lesser included charge. Therefore, *Anderson* II properly dismissed the alternative means charge, but allowed the refiling of a lesser included charge. Had no appropriate lesser included charge existed, the remedy for failure to join alternative means would have been dismissal *with prejudice*.

*Pelkey* and *Anderson* II are straightforward applications of the mandatory joinder rule. A similar application to the facts of the case before us results in dismissal of a new charge of theft. Theft and possession of stolen property are related charges as defined in CrR 4.3(c)(1) because they are based on the same conduct and were within the jurisdiction and venue of the same court. Petitioner asserts and Respondent agrees neither is a lesser included of the other.[2] If

___

[2]We assume for the purposes of this appeal that neither is a lesser included of the other because the parties are in agreement. Cases under the pre-1975 larceny statute hold one cannot be both the principal thief and the receiver of

neither is a lesser included of the other, the mandatory joinder rule would operate to require the second charge, theft, to have been brought in the original information or not at all.

The State argues this result conflicts with the Court of Appeals decision in *State v. Vangerpen*, 71 Wn. App. 94, 856 P.2d 1106 (1993), which we recently affirmed. *State v. Vangerpen*, 125 Wn.2d 782, 797, 888 P.2d 1177 (1995). However, the issue in *Vangerpen* was the proper remedy for a charging document which was defective as to the highest charge but adequate to support lesser included charges. Because lesser included crimes were involved, the parties did not assert and we did not consider application of the mandatory joinder rule.

The State also argues a conflict with *State v. Markle*, 118 Wn.2d 424, 823 P.2d 1101 (1992). The conflict is not direct, however. Like this case, *Markle* deals with separate crimes — indecent liberties and statutory rape — that could have been joined in the original information. However, the defendant in *Markle* did not raise the question of the mandatory joinder rule, but instead asked for dismissal with prejudice based upon violation of the constitutional prohibition against double jeopardy. *Markle* holds there is no double jeopardy bar to retrying the defendant. *Markle*, 118 Wn.2d at 441. We did not consider the application of the mandatory joinder rule.

*Markle* was based on *State v. Irizarry*, 111 Wn.2d 591, 763 P.2d 432 (1988). *Irizarry* involved alternative means of committing a crime. We dismissed the case because of an improper amendment but allowed retrial based on a double

---

stolen goods. *State v. Hite*, 3 Wn. App. 9, 12, 472 P.2d 600, *review denied*, 78 Wn.2d 995 (1970), *cert. denied*, 403 U.S. 933 (1971). This holding was extended to the present statute in *State v. Hancock*, 44 Wn. App. 297, 301, 721 P.2d 1006 (1986). There are no cases holding to the contrary, although *State v. Alford*, 25 Wn. App. 661, 611 P.2d 1268 (1980), *aff'd sub nom. State v. Claborn*, 95 Wn.2d 629, 628 P.2d 467 (1981) has been cited for that proposition. *See State v. Chelly*, 32 Wn. App. 916, 920, 651 P.2d 759 (1982), *aff'd sub nom. State v. Johnson*, 100 Wn.2d 607, 674 P.2d 145 (1983). The issue in *Alford* was whether evidence of taking could be used to show knowledge that the goods were stolen.

jeopardy analysis. *Irizarry*, 111 Wn.2d at 596. *Irizarry* cites *Anderson* II for its double jeopardy holding, but does not discuss the latter case's distinction between double jeopardy and mandatory joinder. Although a mandatory joinder challenge would have been appropriate, the issue appears not to have been raised. The failure of the defendants in *Markle* and *Irizarry* to argue mandatory joinder ought not dictate the results here.

The State attempts to distinguish *Anderson* II, based on the fact the alternative means was not amended into the information in the first trial, but was brought for the first time on retrial. According to the State's analysis, the critical factor in allowing retrial is the fact the defendant was actually convicted of the amended charge at the first trial. However, were we to adhere to this analysis, the remedy for an improper attempt to amend an information would depend upon when the impropriety was recognized. If the trial court correctly refused the State's motion to amend and the evidence did not support the original charge, dismissal would result and the mandatory joinder rule would not permit recharging the attempted amendment. If, on the other hand, the trial court incorrectly allowed the amendment and proceeded to convict on the amended charge, the appellate court would dismiss without prejudice to refile. This difference in remedy is substantial enough to encourage courts to overlook improper amendments and proceed to verdict, thereby wasting the resources of the trial courts and encouraging needless appeals.

The State's final argument is that an improper amendment violates a defendant's right to notice, and retrial is the way to correct a notice problem. However, when prosecutorial negligence results in a mistrial, the public interest in judicial efficiency is not well served, and the defendant is potentially subjected to another trial and more delay. These policy interests must also be considered when looking at the appropriate remedy.

The purpose of CrR 4.3(c) was discussed by this court in *State v. Russell*, 101 Wn.2d 349, 678 P.2d 332 (1984). The

*Russell* court stated that issue preclusion was the rationale behind the rule. It based its view on American Bar Association (ABA) standards:

> "[T]he purpose of this section of the standards is to protect defendants from 'successive prosecutions based upon essentially the same conduct, whether the purpose in so doing is to hedge against the risk of an unsympathetic jury at the first trial, to place a "hold" upon a person after he has been sentenced to imprisonment, or simply to harass by multiplicity of trials.'"

*Russell*, 101 Wn.2d at 353 n.1 (quoting *ABA Standards Relating to Joinder and Severance* 19 (Approved Draft, 1968)).

In a similar case, *State v. Carter*, 56 Wn. App. 217, 783 P.2d 589 (1989), the Court of Appeals also examined the commentary accompanying these standards:

> If the defendant knows before the first trial that related offenses have been charged and he makes the appropriate motion, the offenses are merely joined; if the defendant does not have this knowledge before the first trial, the defendant's subsequent motion will bar prosecution of related offenses in *every* case in which the offenses would have been joined but for the prosecutor's failure to charge or to apprise the defendant of the charge.

*Carter*, 56 Wn. App. at 221 (quoting *ABA Standards Relating to Joinder and Severance* § 1.3(c) commentary, at 23-24 (Approved Draft, 1968)).

Thus, CrR 4.3(c) was intended as a limit on the prosecutor. As such, it does not differentiate based upon the prosecutor's intent. Whether the prosecutor intends to harass or is simply negligent in charging the wrong crime, CrR 4.3(c) applies to require a dismissal of the second prosecution. Therefore, the prosecutor is not entitled to proceed against the Defendant here on the related theft charge.

Because the mandatory joinder rule requires the dismissal of a refiled theft complaint in this case, as a matter of judicial economy we dismiss the case with prejudice, as we did in *Pelkey*.

The State argues remand is necessary because the final sentence of the mandatory joinder rule, allowing the court to deviate from the rule when the "ends of justice" require

it, creates a discretionary area for the trial court. It argues that, if the rule is applicable, it would require the trial court to conduct a particularized inquiry into the circumstances surrounding the State's failure to charge the proper crime to see whether the ends of justice require trial rather than dismissal.

To analyze this argument, we look to the reasoning of the Court of Appeals in *Carter*. There the court analogized the "ends of justice" to the portion of CR 60(b)(11) allowing courts to vacate judgments "whenever such action is appropriate to accomplish justice". *Carter*, 56 Wn. App. at 223 (quoting *Klapprott v. United States*, 335 U.S. 601, 615, 93 L. Ed. 266, 69 S. Ct. 384 (1949)). Under that rule and its federal analog, courts have required "extraordinary circumstances". *Ackermann v. United States*, 340 U.S. 193, 200, 95 L. Ed. 207, 71 S. Ct. 209 (1950); *In re Marriage of Flannagan*, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985), *review denied*, 105 Wn.2d 1005 (1986). The circumstances must involve reasons which are extraneous to the action of the court or go to the regularity of its proceedings. *Flannagan*, 42 Wn. App at 221.

The case before us involves a very ordinary mistake. Given its facts, there is no credible argument that extraordinary circumstances existed and no reason to allow this case to go back to the trial court.

DURHAM, C.J., DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, and TALMADGE, JJ., and UTTER, J. Pro Tem., concur.