[No. 7668-3-II.  Division Three.  July 8, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. FREDERICK HANCOCK, *Appellant.*

298

*Paul H. Meyer,* for appellant (appointed counsel for appeal).

*Gary P. Burleson, Prosecuting Attorney,* for respondent.

McINTURFF, J.*—Frederick Hancock appeals his jury convictions of first degree theft and first degree possession of stolen property arising from the same conduct. We hold the Legislature did not intend that a principal thief be

---

*This appeal was heard by a panel of Division Three judges sitting in Division Two.

convicted of both charges and therefore reverse the posses-
sion of stolen property conviction.

The Mason County Community Action Council is an
agency which distributes surplus food to Mason County
food banks. In March 1983, Bob Beasley assumed the non-
salaried position of advisory chairperson of the council at
the invitation of Edward Pfeiffer, one of the council's board
members. Mr. Pfeiffer asked Mr. Beasley to determine
whether the council was losing food to internal thieves.

On April 1, 1983, Mr. Beasley contacted Detective Ken-
neth Dobie, of the Shelton Police Department. Detective
Dobie told Mr. Beasley they did not have the manpower to
investigate his allegation about food pilfering, and he
advised Mr. Beasley not to attempt to investigate the
problem himself.

On April 4, Mr. Beasley talked with the defendant, Fred
Hancock, also a member of the council's board. Mr. Beasley
testified Mr. Hancock told him he "would like to get his
hands on some of the food if he could turn it into a profit."
After some discussion, the two men met at the Mason
County Fairgrounds, where the council stored food, and
loaded 139 cases of cheese into Mr. Beasley's van. Mr.
Beasley took the cheese to his barn, but told Mr. Hancock
that he had stored the cheese in a friend's garage. Mr.
Beasley was to find a buyer; he said Mr. Hancock told him
he had been receiving $40 a case for the same type of
cheese on the Tacoma docks.

On April 25, Mr. Beasley contacted Deputy Robert
Shepherd of the Mason County Sheriff's Department. Dep-
uty Shepherd arranged for Fel Albille, a detective of Japa-
nese ancestry with the Kitsap County Sheriff's Office, to
pose as a sailor off a Japanese ship seeking black market
commodities. Mr. Beasley told Mr. Hancock that he had a
buyer and that Mr. Hancock could meet the buyer at a
specified location at 8:30 a.m. on April 28, close the deal,
then take the buyer to the cheese, which Mr. Beasley now
revealed he had stored in his own barn.

Mr. Hancock met Detective Albille as arranged. Accord-

ing to Detective Albille, Mr. Hancock negotiated a price of $4,900 for the cheese after telling him he had received $65 a case in the fall of 1982. Mr. Hancock then led him to Mr. Beasley's barn and helped load the cheese into Detective Albille's U–Haul. Mr. Hancock was arrested at the scene.

Mr. Hancock did not deny his involvement, but testified he was initially motivated by a desire to help Mr. Beasley, who was having financial difficulties. He stated he went through with the deal because he feared for his own safety at the hands of the buyer.

To establish the value of the cheese, the State called James Hackett, Washington State's distributing agent for United States Department of Agriculture commodities. Over Mr. Hancock's objection, Mr. Hackett testified the State values the cheese by using the federal commodities price chart, which listed cheese at $1.47 per pound on April 28, 1983. This is the price the United States pays for the cheese on the surplus commodities market. On cross examination, Mr. Hackett admitted the federal government gives the cheese to the State.

The jury convicted Mr. Hancock of first degree theft and first degree possession of stolen property.

First, Mr. Hancock contends the court erred when it denied his motion to dismiss the charge of possession of stolen property.

We note the larceny statute in effect prior to 1975 set forth five different classes of larceny including taking the property of another and the knowing receipt of property wrongfully appropriated. RCW 9.54.010(1), (5).[1] These

---

[1]Former RCW 9.54.010 provided:

"Every person who, with intent to deprive or defraud the owner thereof—

"(1) Shall take, lead or drive away the property of another; or

". . .

"(5) Every person who, knowing the same to have been so appropriated, shall bring into this state, or buy, sell, receive or aid in concealing or withholding any property wrongfully appropriated . . .

"Steals such property and shall be guilty of larceny." Laws of 1915, ch. 165, § 3, p. 493 (amending Laws of 1909, ch. 249, § 349, p. 997) (repealed by Laws of 1975, 1st Ex. Sess., ch. 260(144), p. 858).

two offenses are now encompassed in separate statutes defining theft, RCW 9A.56.020(1)(a),[2] and possession of stolen property, RCW 9A.56.140(1).[3] The cases under the pre–1975 statute hold that one cannot be both the principal thief and the receiver of stolen goods. *State v. Hite,* 3 Wn. App. 9, 12, 472 P.2d 600 (1970), *cert. denied,* 403 U.S. 933 (1971); *State v. Flint,* 4 Wn. App. 545, 547, 483 P.2d 170 (1971). *Flint* quotes Mr. Justice Frankfurter, dissenting in *Milanovich v. United States,* 365 U.S. 551, 558, 5 L. Ed. 2d 773, 81 S. Ct. 728 (1961): "And this is so for the common-sensical, if not obvious, reason that a man who takes property does not at the same time give himself the property he has taken." Dicta in *State v. Richards,* 27 Wn. App. 703, 707, 621 P.2d 165 (1980), decided after the Legislature enacted separate statutes defining the two offenses, continues to cite this principle favorably. We now hold the rule prohibiting such dual convictions survived the 1975 legislative changes.

However, the State argues Mr. Hancock committed both offenses based solely on the facts that Mr. Beasley took the cheese to his barn after the theft and Mr. Hancock did not know its exact location for approximately 3 weeks. In the State's view, Mr. Hancock thereby relinquished control of the cheese to Mr. Beasley, then reestablished possession on April 28 in order to sell it. We disagree.

The foregoing is not evidence that Mr. Hancock gave the cheese to Mr. Beasley on April 4, who then gave the cheese back to Mr. Hancock on April 28. Rather, the evidence was

---

[2]RCW 9A.56.020 states in pertinent part:

"(1) 'Theft' means:

"(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; . . ."

[3]RCW 9A.56.140(1) provides:

"'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto."

that Mr. Beasley held the cheese for himself and Mr. Hancock until they procured a buyer and could share in the profits from their theft. Mr. Hancock remained in constructive possession of the cheese at all times, *i.e.,* it was under the dominion and control of either himself or his agent, Mr. Beasley. *Cf. State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969); *State v. Hystad,* 36 Wn. App. 42, 671 P.2d 793 (1983) (constructive possession in narcotic cases is established when the person charged has dominion and control over either the drug or the premises where the drug is found). Thus, the Superior Court should have dismissed the possession count.[4]

Second, Mr. Hancock maintains the jury did not have sufficient evidence of the value of the cheese to support the first degree theft conviction. We disagree.

■ "A person is guilty of theft in the first degree if he commits theft of: (a) Property or services which exceed(s) one thousand five hundred dollars in value". RCW 9A.56-.030. "'Value' means the market value of the property or services at the time and in the approximate area of the criminal act." RCW 9A.56.010(12)(a). "'Market value' is . . . the price which a well–informed buyer would pay to a well–informed seller, where neither is obliged to enter into the transaction." *State v. Clark,* 13 Wn. App. 782, 787, 537 P.2d 820 (1975) (citing *State v. Rowley,* 74 Wn.2d 328, 444 P.2d 695 (1968)). Here, instructions 8 and 9 defined value and market value in just these terms.[5]

Mr. Hancock argues that James Hackett's testimony that the State valued the cheese with reference to the federal price chart does not constitute evidence of market value.

---

[4]In light of our holding that the second conviction was improper, we need not address Mr. Hancock's merger and double jeopardy arguments.

[5]Instruction 8 provided:
"Value means the market value of the property or services at the time and in the approximate area of the act."
Instruction 9 provided:
"Market value is an amount which a well informed buyer would pay a well informed seller in a voluntary transaction."

We agree Mr. Hackett's testimony is not evidence of what a willing buyer and seller would agree upon "where neither is obliged to enter into the transaction." *Clark,* at 787. Rather, his testimony describes the price support which the federal government pays the farmer pursuant to legislation and is not evidence of market value.[6]

But there is other evidence of value. Mr. Beasley stated Mr. Hancock told him he had received $40 a case for the same type of cheese on the Tacoma docks. Detective Albille testified Mr. Hancock told him that he had received $65 a case in the fall of 1982. The testimony of the price at which Mr. Hancock had previously sold the cheese provides sufficient evidence of the market value of the cheese.

■ Nevertheless, Mr. Hancock argues this testimony was not offered by the State to prove market value, and, if it had been so offered, he would have objected on the basis of hearsay, relevancy, or lack of foundation. He relies on *State v. Coleman,* 19 Wn. App. 549, 576 P.2d 925 (1978). There, the only evidence of the value of the stolen goods was the goods themselves with the retail price tags attached. The defendant had objected to the admission of the tags. The court held there was no foundation testimony by which the price tags could be admitted on the issue of value. *Coleman,* at 553. Here, Mr. Hancock did not object to the cited testimony and he therefore waived any objection he might have had. *Peeples v. Port of Bellingham,* 93 Wn.2d 766, 774, 613 P.2d 1128 (1980).

■ Third, Mr. Hancock assigns error to the admission of Mr. Hackett's testimony. According to Mr. Hancock, this testimony, based on the federal commodities chart, was hearsay and was irrelevant on the issue of market value. However, this is an evidentiary error and evidentiary errors not of constitutional magnitude are reversible only if preju-

---

[6]If the State had shown that surplus cheese has no market value, then it could have relied on Mr. Hackett's testimony as evidence of the value of the cheese to its owner, the State of Washington. *Clark,* at 787, states that such evidence is admissible in the absence of market value. Instead, the State chose to equate value with market value, and the court so instructed the jury.

dicial, *i.e.,* if, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred. *State v. Kelly,* 102 Wn.2d 188, 199, 685 P.2d 564 (1984) (citing *State v. Tharp,* 96 Wn.2d 591, 599, 637 P.2d 961 (1981)). As noted above, testimony concerning previous sales supplied sufficient evidence of value to support the jury's verdict. Mr. Hackett's testimony was not necessary and we find it had no material effect on the verdict.

Lastly, Mr. Hancock argues the court erred by refusing to give a lesser included instruction on second degree theft. In support of such an instruction, he relies on his own testimony that if Detective Albille had offered him $10 a case for the cheese, he would have accepted it. He made this statement in the context of describing his nervousness over dealing with Detective Albille, whom he testified he believed was a dangerous, mafia–style gangster. This evidence relates to a panic price, which is not evidence of market value. *Donaldson v. Greenwood,* 40 Wn.2d 238, 252, 242 P.2d 1038 (1952). Thus, the court properly rejected the second degree theft instruction as unsupported by the evidence.

The judgment of the Superior Court convicting Mr. Hancock of first degree possession of stolen property is reversed; Mr. Hancock's conviction of first degree theft is affirmed.

GREEN, C.J., and MUNSON, J., concur.