

2016 NOV 21 AM 8: 33

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
)  DIVISION ONE
Respondent, )
)  No. 73740-6-I
v. )
)  UNPUBLISHED OPINION
JASON TYLER GARCIA, )
)
Appellant. )  FILED: November 21, 2016
_____)

DWYER, J. — Jason "J.T." Garcia appeals from the judgment entered on a jury's verdict finding him guilty of robbery in the first degree committed while armed with a firearm and while on community custody, unlawful possession of a firearm in the second degree, and possession of stolen property in the second degree. He contends that the trial court erred by ruling that a victim's utterances recorded during a 911 conversation were both admissible as excited utterances and as nontestimonial statements. We conclude that there was no error.

Garcia also contends, and the State concedes, that both of his convictions for robbery and possession of stolen property cannot stand. We remand for vacation of the possession of stolen property conviction, a result required by controlling authority.

I

On October 12, 2014, an employee of a Motel 6 in Everett telephoned 911 to report that Brett Losey and Shana Morcom had just been robbed. The 911 operator asked the employee several questions regarding the location of the

robbery and whether medical assistance was required, and then asked to speak directly to Losey. Losey explained, in response to the 911 operator's questions, that he and Morcom had been robbed at gunpoint in their motel room five minutes earlier. Losey referenced more than one robber during the 911 call, stating that "they" made him and Morcom wait in the bathroom until the robbers had left. Losey stated that he knew the individual who held the gun—who he called "J.T." and described as a 26-year-old white male with long, brown hair, wearing jeans, a light-colored jersey, and a red hat. Losey did not know J.T.'s last name.

After police arrived at the motel, Losey and Morcom described the second robber as a 30-year-old male, bald, wearing a black T-shirt, with a teardrop tattoo near his left eye. The police were able to track Morcom's stolen cell phone to a residential location where they apprehended Jacob T. Harrison.[1] Losey and Morcom each personally identified Harrison as the second robber.

On October 16, 2014, Lynnwood Police Officer Zachariah Olesen arrested Garcia on an outstanding warrant. Olesen discovered that Garcia was holding two debit cards that had been stolen from Losey and Morcom during the robbery four days earlier. Olesen contacted Losey and Morcom and told them that their property had been found in the possession of Garcia. Morcom responded that she knew Garcia as "J.T." and that he had robbed her and Losey. Several days

---

[1] Although both Garcia and Harrison share the initials "J.T.," only Garcia matched Losey's description of the robber who was holding the gun.

after Garcia's arrest, Morcom positively identified Garcia during a police photomontage, stating that she was 100 percent certain of her identification.

Prior to trial, the trial court granted the State's motion in limine to admit the 911 conversation into evidence as an excited utterance. In so ruling, the trial court stated that Losey spoke with "a degree of agitation" in his voice during the 911 call, although he also sounded "fairly measured" at the beginning of the call. The trial court concluded that Losey "didn't sound as though he considered himself to be safe." The trial court also denied Garcia's motion to suppress evidence of the 911 call for violating the confrontation clause of the United States Constitution, concluding that the call was nontestimonial. Losey was unable to testify at trial, as he was then hospitalized.

The jury found Garcia guilty of robbery in the first degree while armed with a firearm and while on community custody, unlawful possession of a firearm in the second degree, and possession of stolen property in the second degree. The trial court imposed concurrent prison sentences of 231 months for the robbery conviction, 60 months for the possession of a firearm conviction, and 29 months for the possession of stolen property conviction. Garcia timely appealed.

II

A

Garcia contends that the trial court erred by admitting Losey's statements during the 911 conversation as excited utterances. This is so, he asserts, because when Losey spoke to the 911 operator he was no longer under the stress of excitement caused by the robbery.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. State v. Rodriquez, 187 Wn. App. 922, 939, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015). Abuse of discretion occurs when the trial court's ruling is manifestly unreasonable or based on untenable grounds or reasons. State v. Garcia, 179 Wn.2d 828, 844, 318 P.3d 266 (2014).

An "excited utterance" is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). Our Supreme Court has recognized three closely connected requirements for analyzing an excited utterance: (1) a startling event or condition occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition. State v. Young, 160 Wn.2d 799, 806, 161 P.3d 967 (2007). "Washington courts have found statements admissible under this exception despite significant lapses of time between the startling or exciting event and the statement concerning it." ROBERT H. ARONSON & MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON § 10.07(2)(b)(i), at 10-31 (5th ed. 2016).

The first and third elements are not in dispute in this matter. The second element can be established by circumstantial evidence, such as "the declarant's behavior, appearance, and condition; . . . and the circumstances under which the statement is made." Young, 160 Wn.2d at 810. "The key determination is often 'whether the statement was made while the declarant was still under the influence of the event to the extent that the statement could not be the result of

fabrication, intervening actions, or the exercise of choice or judgment.'"
Rodriquez, 187 Wn. App. at 939 (quoting State v. Woods, 143 Wn.2d 561, 597, 23 P.3d 1046 (2001)).

Immediately after the robbers had left the hotel room, Losey and Morcom went to the front desk of the motel and asked the employee to call 911 on their behalf. After confirming the location of the robbery and that no one was injured, the 911 operator spoke directly to Losey and asked him a series of questions. These questions were intended to determine (1) whether medical assistance was required, and (2) the description and possible location of the robbers who were actively fleeing the scene of the crime. Losey could not answer some of the questions that he was asked by the 911 operator, explaining that, at the time of the incident, he was "star[ing] down the barrel of a gun" and thus could not remember all of the details. Near the end of the call Losey expressed, "I'm afraid he's gonna shoot me now. I'm snitchin'. It's crazy."

The trial court listened to the 911 conversation and stated, "there wasn't a great deal of agitation in it at the beginning, but it seemed to me the stress in his voice built as he was speaking. And it appeared – it sounded to me as though there was a degree of agitation in his voice." The trial court noted that "it didn't sound as though [Losey] considered himself to be safe" and that Losey "was contemplating the possibility that he might pay a rather high price for making the phone call that he was making."[2]

_____

[2] The trial court made the same determination in the State's case against Harrison, where it noted that Losey spoke with "what sounds like a heightened level of agitation in his voice, and it sounds as though it rises to a peak where he blurts out something about being afraid that he's

-5-

The evidence establishes that the 911 conversation took place shortly after an armed robbery in which Losey had a gun pointed at his head. Because of the fear that this event caused, Losey was at times unable to remember details regarding the robbery or understand and respond to the 911 operator's questions. Moreover, Losey's revelation at the end of the phone call—that he was "snitchin'" and afraid he may be shot—further supports that Losey caused the 911 call to be made before he had time to reflect and consider the consequences of making his statements.

The trial court properly considered the evidence before it and ruled that Losey was still under the stress of the excitement of the robbery at the time he talked with the 911 operator. Such a determination was not manifestly unreasonable or based on untenable grounds or reasons. Garcia, 179 Wn.2d at 844. There was no error.

### B

Garcia next contends that the trial court violated the confrontation clause of the Sixth Amendment of the United States Constitution by ruling that the 911 conversation was nontestimonial and thus admissible. This is so, he asserts, because the primary purpose of the 911 conversation was not to respond to an ongoing emergency but, rather, to relate information regarding past events. We disagree.

---

going to be shot, which is something that is perhaps consistent with a person having a gun put to their head."

We review de novo an alleged violation of the confrontation clause. State v. Koslowski, 166 Wn.2d 409, 417, 209 P.3d 479 (2009). The confrontation clause bars the admission of "testimonial" hearsay in criminal trials unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. U.S. CONST. amend. VI; Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). "Testimony" has been defined as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Crawford, 541 U.S. at 51 (alteration in original) (quoting 2 N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)).

The Court in Crawford expressly declined to expand on what statements are considered "testimonial." 541 U.S. at 68. In light of the uncertainty created by this omission, the Court later announced the "primary purpose" test to distinguish between testimonial and nontestimonial witness utterances:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006).[3]

---

[3] "Our inquiry is also guided by (1) whether the speaker was speaking about past events or current ones as they were occurring, requiring police assistance, (2) whether a reasonable listener would conclude that the speaker was facing an ongoing emergency, (3) the nature of the information elicited by police, and (4) the formality of the interrogation." State v. Perez, 184 Wn.

Whether an ongoing emergency exists is determined by an objective evaluation of "the circumstances in which the encounter occurs and the statements and actions of the parties." Michigan v. Bryant, 562 U.S. 344, 359, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011). "[T]he relevant inquiry *is not the subjective or actual purpose of the individuals involved* in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." Bryant, 562 U.S. at 360 (emphasis added). Moreover, whether there is an ongoing emergency is not the sole, determining factor in deriving the primary purpose of the utterances. Rather, admissibility depends on whether "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" Ohio v. Clark, __ U.S. __, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015) (alteration in original) (quoting Bryant, 562 U.S. at 358).

Neither party disputes that Losey was unavailable to testify or that Garcia had no prior opportunity to cross-examine him. Thus, the sole issue is whether his utterances in the 911 conversation were testimonial.

"[T]he initial interrogation conducted in connection with a 911 call[] is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." Davis, 547 U.S. at 827 (some alterations in original) (quoting Crawford, 541 U.S. at 51). Indeed,

App. 321, 339, 337 P.3d 352 (2014) (citing Koslowski, 166 Wn.2d at 418-19), review denied, 182 Wn.2d 1017 (2015).

-8-

although an armed robber may have fled the scene of the crime, the emergency may still be ongoing. A fleeing robber may pose a continuing threat to the public, and the information that a person provides to a 911 operator regarding the robber's name, physical description, and whereabouts is necessary for the police to promptly evaluate the danger and respond appropriately. Similarly, an attempt by the 911 operator to establish the identity of the robber is necessary "so that the dispatched officers might know whether they would be encountering a violent felon." Davis, 547 U.S. at 827. Whether either participant harbors a secondary purpose in making such utterances—such as an intention to have the robber prosecuted—is not significant so long as it is not the primary purpose a reasonable person would have had in making the utterances. Clark, 135 S. Ct. at 2180; accord Bryant, 562 U.S. at 368; Davis, 547 U.S. at 827.

Here, the 911 operator first spoke to the motel employee who placed the call. The employee confirmed the location of the robbery and that no one was hurt. The employee then transferred the telephone to Losey. The 911 operator again confirmed that no one was injured and asked Losey details about the incident. The 911 conversation principally established that (1) at least one of the robbers was armed, (2) the robbers were actively fleeing the scene of the crime, and (3) the current location and final destination of the robbers was unknown.

Losey's conversation with the 911 operator was the type of question-and-answer conversation that reasonable participants would have engaged in when their primary purpose was to ask for police assistance in resolving an ongoing emergency. Moreover, Garcia's contention that the "summoning for help" ended

upon the transfer of the telephone from the employee to Losey ignores the reason for the transfer entirely—namely, to allow the emergency operator to more quickly and effectively respond to the emergency by speaking directly to the victim.[4]

Viewed properly, the primary purpose of the 911 conversation was not to create an out-of-court substitute for trial testimony. Clark, 135 S. Ct. at 2180. Thus, it was not testimonial. Accordingly, no confrontation clause violation is established.

III

Garcia contends, and the State concedes, that both his conviction for robbery and his conviction for possession of stolen property cannot stand. We agree.

It is well established that "one cannot be both the principal thief and the receiver of stolen goods." State v. Hancock, 44 Wn. App. 297, 301, 721 P.2d 1006 (1986). Indeed, the taker of the property "does not at the same time give himself the property he has taken." Milanovich v. United States, 365 U.S. 551, 558, 81 S. Ct. 728, 5 L. Ed. 2d 773 (1961) (Frankfurter, J., dissenting). In cases where the defendant is charged with both robbery and possession of the same stolen property, the trial court must instruct the jury to first consider the robbery charge and then consider the possession charge only if it finds insufficient proof

_____

[4] Garcia also contends that the 911 conversation presented a degree of formality, evidencing that it was testimonial in nature. This is so, he asserts, because making false statements to a 911 operator is prohibited by law. However, the Court has already addressed this line of argument in Davis, which itself involved a 911 conversation. 547 U.S. at 817-18. The applicable standard remains an objective determination of the primary purpose that reasonable participants would have had in making the statements under the circumstances then extant.

-10-

that the defendant was the robber. United States v. Gaddis, 424 U.S. 544, 550, 96 S. Ct. 1023, 47 L. Ed. 2d 222 (1976). If the jury was not so instructed, and the defendant was convicted of both charges, the conviction for possession of stolen property must be vacated. State v. Melick, 131 Wn. App. 835, 844, 129 P.3d 816 (2006).

Garcia was charged and convicted of robbery in the first degree and possession of stolen property. The two convictions cannot both stand. Melick, 131 Wn. App. at 844. The State concedes this point and requests that we remand this matter to the trial court to vacate Garcia's conviction for possession of stolen property.[5]

We remand for vacation of the conviction for possession of stolen property. We affirm in all other respects.

Affirmed in part, and reversed in part.

We concur:

_____

_____    Becker, J.

---

[5] Garcia contends that *both* his conviction for robbery and his conviction for possession of stolen property must be vacated. He is wrong. Gaddis makes clear that the jury must be instructed to first consider the robbery charge and only proceed to consideration of the possession charge should it determine that there is insufficient evidence on the robbery charge. 424 U.S. at 550. Washington cases are in accord, holding that the proper remedy is to vacate the possession charge. Melick, 131 Wn. App. at 844; Hancock, 44 Wn. App. at 304.

-11-