
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| Elissa Aguilar, individually, Kerri Feeney, as Guardian ad Litem for the minor children of Elissa Aguilar, J. Ramirez, a minor child, I. Ramirez, a minor child, and M. Ramirez, a minor child, | ) ) ) ) ) | No. 38467-5-III |
| | ) | |
| Appellants, | ) | UNPUBLISHED OPINION |
| | ) | |
| v. | ) ) | |
| Dr. Brent A. Clark, DPM, and Jane Doe Clark, individually and as a marital community, Dr. Ryan Cornia, DPM, and Jane Doe Cornia, individually and as a marital community, Walla Walla Clinic, Inc., P.S., | ) ) ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

FEARING, J. — When no action occurred in the case for over a year, the superior

court clerk dismissed Elissa Aguilar's suit for want of prosecution. One year later,

Aguilar moved to reinstate the case. The trial court declined reinstatement. Aguilar now

asks that this court reinstate the suit because of a defective notice of dismissal or because equitable principles compel reinstatement. Because the superior court did not incorrectly apply the law and did not abuse its discretion in declining reinstatement, we affirm.

FACTS

The important facts on appeal arise from proceedings in the superior court rather than the facts underlying plaintiff Elissa Aguilar's suit. On July 28, 2015, Aguilar filed a complaint against Brent Clark, Ryan Cornia, and Walla Walla Clinic. On February 1, 2019, the parties filed a stipulated motion to continue the trial date.

From the trial court's perspective, the case lay dormant after the February 2019 filing. According to one of Elissa Aguilar's attorneys, a key expert witness' involvement in another lawsuit and a later medical emergency prevented the parties from determining an appropriate trial date.

On July 20, 2020, the superior court clerk mailed a notice of dismissal for want of prosecution to both of Elissa Aguilar's attorneys: William Gilbert and Brandon Casey. The clerk did not send a notice directly to Aguilar. The notice informed the recipients that the clerk would dismiss the case without prejudice within thirty days of the mailing unless a party took action of record or filed a status report.

William Gilbert avers that he never received the clerk's notice. Brandon Casey agrees his office received the notice. Casey's office receptionist had recently quit due to stress related to the Covid-19 pandemic. Casey's temporary receptionist misfiled the

clerk's notice without informing Casey. Without suggesting that Gilbert received the

notice, we applaud Casey for his honesty.

On August 28, 2020, the superior court entered an order of dismissal. The order

read:

> [1] CLERK'S NOTICE OF DISMISSAL FOR WANT OF
> PROSECUTION WAS MAILED TO THE ATTORNEYS OR PARTIES
> OF RECORD AT THEIR LAST KNOWN ADDRESS NOT LESS THAN
> 30 DAYS PRIOR TO THE DATE OF THIS ORDER, AND
> [2] NO PARTY HAS TAKEN ACTION OF RECORD IN THIS
> CASE OR FILED A STATUS REPORT PURSUANT TO THE CLERK'S
> NOTICE OF DISMISSAL FOR WANT OF PROSECUTION.

Clerk's Papers (CP) at 22. On July 26, 2021, attorney Brandon Casey discovered the

clerk's notice in his files.

PROCEDURE

On August 11, 2021, Elissa Aguilar brought motion to vacate the order of

dismissal. Aguilar argued that, under CR 41(b)(2)(B), the clerk's notice was defective

because attorney William Gilbert never received it. Alternatively, Aguilar argued for

discretionary reinstatement under CR 60(b).

The superior court denied the motion to vacate. The order of denial reads:

> 1. This Court's clerk mailed the required Notice for Dismissal for
> Want of Prosecution to the parties on July 20, 2020.
> 2. No action of record took place by any party in the twelve months
> preceding the filing of the clerk's Notice.
> 3. Counsel for Plaintiff and Counsel for Defendants received the
> clerk's Notice.

3

4.  Within 30 days following the Notice, there was no action of record and no showing of good cause for continuing the case.

5.  This Court issued a signed Order of Dismissal for Want of Prosecution on August 28, 2020.

6.  Plaintiff has failed to meet her burden for relief from a final order under CR 60(b).

CP at 63.

## LAW AND ANALYSIS

On appeal, Elissa Aguilar again cites CR 41(b)(2) and CR 60(b) as grounds for reversing the superior court's denial of her motion to vacate the dismissal. We address CR 41(b)(2) first. CR 41(b)(2) governs a trial court clerk's dismissal of a civil case for want of prosecution:

> *Dismissal on Clerk's Motion.*
> (A) Notice. In all civil cases in which no action of record has occurred during the previous 12 months, the clerk of the superior court *shall notify the attorneys of record by mail* that the court will dismiss the case for want of prosecution unless, within 30 days following the mailing of such notice, *a party takes action* of record or files a status report with the court indicating the reason for inactivity and projecting future activity and a case completion date. If the court does not receive such a status report, it shall, on motion of the clerk, dismiss the case without prejudice and without cost to any party.
> (B) Mailing Notice; Reinstatement. The clerk shall mail notice of impending dismissal not later than 30 days after the case becomes eligible for dismissal because of inactivity. *A party who does not receive the clerk's notice shall be entitled to reinstatement of the case, without cost, upon motion brought within a reasonable time after learning of the dismissal.*
> (C) Discovery in Process. The filing of a document indicating that discovery is occurring between the parties shall constitute action of record for purposes of this rule.

(Some emphases added.)

An involuntary dismissal by a clerk's motion clears the clerk's record of inactive cases. *Vaughn v. Chung*, 119 Wn.2d 273, 277, 830 P.2d 668 (1992). CR 41(b)(2) provides a simple means by which the court system may purge its files of dormant cases. *Miller v. Patterson*, 45 Wn. App. 450, 455, 725 P.2d 1016 (1986).

Elissa Aguilar argued, before the superior court, that under CR 41(b)(2) the clerk's notice was defective because attorney William Gilbert did not receive the notice. On appeal, Aguilar abandons this argument and advances three new contentions. First, CR 41(b)(2) distinguishes between a party and an attorney, and the court clerk must mail notice of dismissal to the party. Second, either the attorney or party must gain actual knowledge of the notice. Third, the superior court should vacate the order of dismissal if the parties engaged in activity unnoticed by court filings.

Under RAP 2.5(a), an appellate court may refuse to hear a claim not preserved by objection below. *State v. Mercado*, 181 Wn. App. 624, 632, 326 P.3d 154 (2014). Thus, in general, a party may not raise an issue for the first time on appeal that it did not raise below. *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996). We address Elissa Aguilar's new contentions anyway.

*Attorney/Party Distinction*

Elissa Aguilar first argues that she should have personally received the clerk's notice and that notice to her attorneys was insufficient. She points to the use of different

5

words within the text of the CR 41(b)(2) rule to support her argument. The rule requires notice to "the *attorneys* of record by mail" prior to dismissal unless "a *party* takes action of record or files a status report." (Emphases added.) Subsection (B) provides for reinstatement of a case when a "*party* . . . does not receive the clerk's notice." (Emphasis added.)

We apply canons of statutory construction to court rules. *State v. Greenwood*, 120 Wn.2d 585, 592, 845 P.2d 971 (1993). One principle of construction directs us to accord disparate meaning to different words used within the same court rule. *Guardado v. Taylor*, 17 Wn. App. 2d 676, 694, 490 P.3d 274 (2021). This principle supports Elissa Aguilar's contention that Subsection (B)'s employment of the word "party" demands that she personally, not her counsel, receive the clerk's notice. Under this principle, the clerk must mail the notice to her.

In contrast to the principle of statutory construction and Elissa Aguilar's contention, the law imputes knowledge by an attorney to his or her client. *Hill v. Department of Labor & Industries*, 90 Wn.2d 276, 279, 580 P.2d 636 (1978). The civil rules provide that service upon an attorney satisfies any rule requiring service to a party "unless service directly upon the party is ordered by the court." CR 5(b)(1). Subsection A of CR 41(b)(2) only requires mailing to counsel. Subsection A also references that a "party" must take action to avoid dismissal. The party would take such action through her attorney, illustrating that the drafters of CR 41(b)(2) intended the words "party" and

"attorney" to be used interchangeably. Based on a natural reading of the rule, we conclude that the clerk need only mail the notice to the party's attorney.

*Actual Notice Requirement*

Elissa Aguilar next argues that CR 41(b)(2) imposes an actual notice requirement. Aguilar extends beyond the previous argument to contend that either she or her lawyer must gain actual knowledge of the notice of dismissal. According to Aguilar, her one attorney never received the notice, and the assistant of her second attorney never brought the notice to the attorney's attention.

Review of a court rule begins with the rule's plain meaning, discerned from its language's ordinary meaning, the context of the rule in which the provision lies, related provisions, and the civil rules as a whole. *Lake v. Woodcreek Homeowners Association*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). CR 41(b)(2)(A) plainly provides that the clerk's notice shall be mailed to the attorneys of record. Thus, a plain reading of the rule establishes that notice is effective upon mailing.

Elissa Aguilar's own argument punctures her suggestion that CR 41(b)(2)(A) requires actual notice. She quotes the dictionary definitions from *Merriam-Webster* and *Black's Law Dictionary* to argue that the verb "receive" can mean "to come into possession of." Appellant's Opening Br. at 15-16. Aguilar does not dispute that attorney Brandon Casey possessed the clerk's notice. In another context, the Supreme Court has

7

recognized that possession does not require awareness. *See State v. Blake*, 197 Wn.2d 170, 183-86, 481 P.3d 521 (2021).

Elissa Aguilar also points to a 1997 drafters' comment addressing the purpose behind CR 41(b)(2)(B):

> The Committee had also been concerned that cases could be dismissed because of clerical error in mailing the notice or failure of the post office to forward mail. The last sentence of proposed section (b)(2)(B) addresses this issue.

*Reprinted in* ELIZABETH A. TURNER, 4 WASH. PRACTICE: RULES PRACTICE CR 41 at 79 (7th ed. 2021). But attorney Brandon Casey acknowledged his office's receipt of the notice. He suffered no clerical error from the superior court clerk's office nor a post office malfunction.

While CR 41(b)(2)(B) implicates an attorney's or party's actual awareness of a clerk's notice, Elissa Aguilar does not benefit from this implication. The subsection provides that, when a notice is not received, a party must move within a reasonable time after obtaining knowledge of the dismissal to obtain reinstatement of the case. To repeat, Brandon Casey's office received notice in July 2020.

*Ongoing Activity*

Elissa Aguilar suggests that ongoing activity occurred outside of the trial court's docket. She characterizes this activity as a "holding pattern," wherein the parties awaited

the availability of an expert witness. She thus argues the trial court should have bestowed

leniency from CR 41(b)(2)'s requirements.

Elissa Aguilar again cites to a 1997 drafters' comment for support:

> the Committee noted that because discovery materials are no longer
> routinely filed with the court (see CR 5(i)), a case may (inaccurately)
> appear to be inactive. . . . The Committee agreed that filing a simple
> "status report" once a year to keep a case "active" was not an undue burden.

*Reprinted in* ELIZABETH A. TURNER, 4 WASH. PRACTICE: RULES PRACTICE CR 41 at 79

(7th ed. 2021). The adoption of CR 41(b)(2)(C) afforded a process for a party to toll

dismissal when activity occurs outside the clerk's file or the parties fly in a holding

pattern. The party may file a status report. Elissa Aguilar filed no report.

*Excusable Neglect*

We move to Elissa Aguilar's contentions under CR 60(b). CR 60(b) grants the

superior court discretionary authority to grant relief from a judgment or order. Relevant

to Elissa Aguilar's arguments, the rule states:

> On motion and upon such terms as are just, the court may relieve a
> party or the party's legal representative from a final judgment, order, or
> proceeding for the following reasons:
> (1) Mistakes, inadvertence, surprise, excusable neglect or
> irregularity in obtaining a judgment or order;
> . . . .
> (11) Any other reason justifying relief from the operation of the
> judgment.
> The motion shall be made within a reasonable time and for reasons
> (1), (2) or (3) not more than 1 year after the judgment, order, or proceeding
> was entered or taken.

CR 60(b) allows subsequent relief from a dismissal for failure to prosecute under CR 41(b)(2). *Vaughn v. Chung*, 119 Wn.2d 273, 283 (1992).

Courts consider equitable principles when deciding a motion to vacate a dismissal for want of prosecution. *See Vaughn v. Chung*, 119 Wn.2d 273, 278-79 (1992). A proceeding to vacate a default judgment is equitable in character and relief is to be afforded in accordance with equitable principles. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). This court reviews a CR 60(b) ruling for abuse of discretion. *State v. Santos*, 104 Wn.2d 142, 145, 702 P.2d 1179 (1985).

Elissa Aguilar advances two arguments under CR 60(b). First, her attorney office's filing mistake qualifies as excusable neglect under CR 60(b)(1). Second, the extraordinary circumstances surrounding the Covid-19 pandemic justify relief from the dismissal.

Whether neglect is excusable turns on the individual facts of the case. *City of Goldendale v. Graves*, 88 Wn.2d 417, 423, 562 P.2d 1272 (1977). The civil rules embody a preference for deciding cases on their merits rather than on procedural technicalities. *Vaughn v. Chung*, 119 Wn.2d 273, 280 (1992).

Elissa Aguilar underscores the fact that the failure to respond to the clerk's notice was unintentional. A party's unintentional failure to act may predicate vacation of default against the party. *DeCaro v. Spokane County*, 198 Wn. App. 638, 645, 394 P.3d 1042 (2017).

No. 38467-5-III,
*Aguilar v. Clark*

We might agree with Elissa Aguilar if we decided the motion to vacate anew. But on abuse of discretion review, we do not reverse when the trial court could have reached a different outcome. Valid reasons support the court's refusal to vacate. This court has found inexcusable the internal failures of organizations to properly forward process to the appropriate personnel. *TMT Bear Creek Shopping Center, Inc. v. Petco Animal Supplies, Inc.*, 140 Wn. App. 191, 212-13, 165 P.3d 1271 (2007); *Johnson v. Cash Store*, 116 Wn. App. 833, 848-49, 68 P.3d 1099 (2003); *Prest v. American Bankers Life Assurance Co.*, 79 Wn. App. 93, 100, 900 P.2d 595 (1995). The mistake occurring in this appeal parallels the failures in the reported decisions.

*Extraordinary Circumstances*

Finally, Elissa Aguilar argues that the outbreak of the Covid-19 pandemic constituted an extraordinary and unusual circumstance to justify relief from dismissal. CR 60(b)(11) provides a catch-all provision for relief based on extraordinary or unusual circumstances not within the control of the party. *State v. Gamble*, 168 Wn.2d 161, 169, 225 P.3d 973 (2010). The circumstances must involve reasons extraneous to the action of the court or go to the regularity of its proceedings. *State v. Dallas*, 126 Wn.2d 324, 333, 892 P.2d 1082 (1995). The provision allows courts to provide relief when such an action is appropriate to accomplish justice. *State v. Carter*, 56 Wn. App. 217, 223, 783 P.2d 589 (1989).

11

We reject reliance on the pandemic. The pandemic was not so disruptive to the judicial system to prevent the trial court from issuing the clerk's notice. Aguilar could have responded to the notice and filed a status report to toll dismissal of her case. We recognize that Brandon Casey's office receptionist had quit employment due to stress related to the Covid-19 pandemic. Nevertheless, Elissa Aguilar does not contend that the pandemic prevented Casey from hiring a capable replacement.

Elissa Aguilar appends 279 pages of State and county level orders pertaining to courtroom rule modifications during the outbreak of Covid-19. Presumably, she intends to convey the disrupting effect Covid-19 had on the court system. Nevertheless, she provides no citation to any provision that would have prohibited her from taking an action of record or that precluded the superior court clerk from dismissal of stale cases.

## CONCLUSION

We affirm the superior court's order denying vacation of the involuntary dismissal of the complaint.

No. 38467-5-III,
*Aguilar v. Clark*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.


WE CONCUR:


_____
Siddoway, C.J.

_____
Staab, J.